# RICKS v. BUDGE et al.

No. 5605.   Decided January 4, 1937.   (64 P. [2d] 208.)
Rehearing Denied February 4, 1937.

308

*George C. Buckle* and *J. Quill Nebeker*, both of Ogden, and *Walter S. Acheson*, of Seattle, Wash., for appellant.

*Budge, Parker & Romney*, of Salt Lake City, for respondents.

EPHRAIM HANSON, Justice.

This is an action for malpractice against the defendants who are physicians and surgeons at Logan, Utah, and are copartners doing business under the name and style of the "Budge Clinic." The complaint contains two causes of action. The first alleges that the defendants were negligent

in failing to properly treat and care for plaintiff and were negligent in discharging him from the hospital before his condition warranted such discharge. For the second cause of action plaintiff alleges that he was suffering from an infected right hand and was in immediate need of medical and surgical care and treatment, and there was danger of his dying unless he received such treatment; that defendants for the purpose of treating plaintiff sent him to the Budge Memorial Hospital at Logan, Utah; that while at the hospital and while he was in need of medical and surgical treatment, defendants refused to treat or care for plaintiff and abandoned his case. At the conclusion of the evidence defendants moved for and the court granted a directed verdict as to each cause of action. To review the rulings of the court granting these motions, plaintiff appeals to this court.

We shall deal with each cause of action separately. The evidence shows that on or about March 8, 1935, plaintiff caught the middle finger of his right hand on a barbed wire. Soon thereafter the finger and hand began to swell and became reddened. In the early morning of March 11th, plaintiff went to the Budge Memorial Hospital to seek treatment from the defendants. Dr. S. M. Budge, one of the defendants, was performing an emergency operation at the hospital at the time plaintiff arrived. Immediately on finishing the operation, he made an examination of plaintiff to determine the nature and extent of plaintiff's injury and the treatment necessary therefore. Dr. Budge made two lateral incisions in the finger, waited a few hours to see the result, and then later the same morning deepened the incisions in order to reach the pus, which he believed had developed. A gauze wick was then put in each incision for the purpose of drainage.

The plaintiff remained in the hospital from March 11th until March 15th, during which time he was under the care of Dr. S. M. Budge. Plaintiff received while in the hospital the usual care and treatment given for such an injury and under that treatment made favorable progress towards re-

covery. On the morning of March 15th, plaintiff told the nurse and Dr. Budge that he intended leaving the hospital that morning. Dr. Budge advised plaintiff against leaving, but notwithstanding the protests of Dr. Budge, plaintiff left the hospital after paying the amount that was due at that time.

There is no evidence whatever to show that the treatment which plaintiff received from Dr. Budge was not proper in every respect. We have examined the record carefully and are unable to find any evidence that even tends to show that the defendants were negligent as alleged in the first cause of action. As to the claim that plaintiff was discharged from the hospital before his condition warranted such discharge, there is no merit whatever. The evidence shows that plaintiff believed his condition to be such that he could take care of himself at home and save the hospital expense; that he was advised by Dr. Budge to remain in the hospital until his condition was further improved, but instead of doing so, over the objection of Dr. Budge, he left the hospital and returned to his home. Under the evidence the trial court was justified in directing a verdict in favor of the defendants in the first cause of action.

The second cause of action, however, presents a more serious question. As to that cause of action the evidence shows that when plaintiff left the hospital on March 15th, Dr. Budge advised him to continue the same treatment that had been given him at the hospital, and that if the finger showed any signs of getting worse at any time, plaintiff was to return at once to Dr. Budge for further treatment; that on the morning of March 17th, plaintiff telephoned Dr. Budge, and explained the condition of his hand; that he was told by the doctor to come to his office, and in pursuance of the doctor's request, plaintiff reported at the doctor's office at 2 p. m. of that day. Dr. Budge again examined the hand and told plaintiff the hand was worse; he called in Dr. D. C. Budge, another of the defendants, who examined the hand, scraped it some, and indicated thereon where the hand

should be opened. Dr. S. M. Budge said to plaintiff: "You have got to go back to the hospital." Plaintiff said he would like a different room from the one he had before, but the doctor told him he would have to take the same room. Plaintiff left immediately for the hospital. Upon arriving there, he was assigned by the matron to the same room he had before, and went to bed at once. The nurse who previously had charge of plaintiff, brought a boric acid solution in which plaintiff began to soak his hand. Within a short time after the arrival of plaintiff, Dr. S. M. Budge arrived at the hospital. Plaintiff testified:

"He [meaning Dr. S. M. Budge] came into my room and said, 'You are owing us. I am not going to touch you until that account is taken care of.' "

(The account referred to was, according to plaintiff, of some years' standing and did not relate to any charge for services being then rendered.) Plaintiff testified that he did not know what to say to the doctor, but that he finally asked the doctor if he was going to take care of him, and the doctor replied:

"No, I am not going to take care of you. I would not take you to the operating table and operate on you and keep you here thirty days, and then there is another $30.00 at the office, until your account is taken care of."

Plaintiff replied:

"If that is the idea, if you will furnish me a little help, I will try to move."

Plaintiff testified that this help was furnished, and that after being dressed, he left the Budge Memorial Hospital to seek other treatment. At that time it was raining. He walked to the Cache Valley Hospital, a few blocks away, and there met Dr. Randall, who examined the hand. Dr. Randall testified that when the plaintiff arrived at the Cache Valley Hospital, the hand was swollen with considerable fluid ooz-

ing from it; that the lower two-thirds of the forearm was red and swollen from the infection which extended up in the arm, and that there was some fluid also oozing from the back of the hand, and that plaintiff required immediate surgical attention; that immediately after the arrival of plaintiff at the hospital he made an incision through the fingers and through the palm of the hand along the tendons that led from the palm and followed those tendons as far as there was any bulging, and opened it up thoroughly all the way to the base of the hand and put drain tubes in. Plaintiff remained under the care of Dr. Randall for approximately a month. About two weeks after the plaintiff entered the Cache Valley Hospital, it became necessary to amputate the middle finger and remove about an inch of the metacarpal bone.

Dr. S. M. Budge testified that at the time he sent the plaintiff to the Budge Memorial Hospital on March 17th, plaintiff was in a dangerous condition and needed immediate surgical and medical attention; that the reason for sending him to that hospital was in order to give him the necessary immediate surgical and medical attention. There can be no question that both Dr. S. M. Budge and Dr. D. C. Budge, on the examination of plaintiff's hand at their office on March 17th, decided that immediate surgical intervention thereon was necessary. The plaintiff testified that at the time he was sent to the hospital by the defendants on March 17th, his hand was badly swollen; that he was unable to move any of his fingers on that hand; that the hand was full of blisters which had broken and were oozing; and that blood was dripping from the places scraped by Dr. D. C. Budge. Dr. S. M. Budge arrived at the hospital a short time after the arrival of plaintiff for the purpose of giving plaintiff such medical and surgical attention as he deemed necessary. There can be no question from the evidence that it was the intention of Dr. S. M. Budge to operate at once on plaintiff's hand.

Defendants contend: (1) That there was no contract of employment between plaintiff and defendants and that defendants in the absence of a valid contract were not obligated

to proceed with any treatment; and (2) that if there was such a contract, there was no evidence that the refusal of Dr. S. M. Budge to operate or take care of plaintiff resulted in any damage to plaintiff.

We cannot agree with either of these propositions. The evidence shows that plaintiff had been under the care and treatment of the defendants at the Budge Memorial Hospital from March 11th to March 15th; that when he left that hospital on March 15th, Dr. S. M. Budge said to him: "If you are going home, you had better follow out the treatment at home just as near as you can the same as you were doing here. Here is another thing I want to tell you, if you see any signs of that finger getting worse at any time, you come in and see me immediately." On March 17th, plaintiff, realizing that his condition was getting worse, telephoned Dr. S. M. Budge and was told by that doctor to come to the doctor's office, which plaintiff did; that there both Dr. S. M. Budge and Dr. D. C. Budge, examined the hand; that Dr. D. C. Budge indicated on it where it should be opened; and that under the instructions of these doctors plaintiff was returned to the hospital for no other purpose than having his hand operated upon at once.

Under this evidence, it cannot be said that the relation of physician and patient did not exist on March 17th. It had not been terminated after its commencement on March 11th. When the plaintiff left the hospital on March 15th, he understood that he was to report to Dr. S. M. ■ Budge if the occasion required and was so requested by the doctor. Plaintiff's return to the doctor's office was on the advice of the doctor. While at the doctor's office, both Dr. S. M. Budge and Dr. D. C. Budge examined plaintiff's hand and they ordered that he go at once to the hospital for further medical attention. That plaintiff was told by the doctor to come to the doctor's office and was there examined by him and directed to go to the hospital for further treatment would create the relationship of physician and patient. That the relationship existed at the time the plain-

tiff was sent to the hospital on March 17th cannot be seriously questioned.

We believe the law is well settled that a physician or surgeon, upon undertaking an operation or other case, is under the duty, in the absence of an agreement limiting the service, of continuing his attention, after the first operation or first treatment, so long as the case requires attention. The obligation of continuing attention can be terminated only by the cessation of the necessity which gave rise to the relationship, or by the discharge of the physician by the patient, or by the withdrawal from the case by the physician after giving the patient reasonable notice so as to enable the patient to secure other medical attention. A physician has the right to withdraw from a case, but if the case is such as to still require further medical or surgical attention, he must, before withdrawing from the case, give the patient sufficient notice so the patient can procure other medical attention if he desires. 21 R. C. L. 389; 48 C. J. 1128, § 115; *Bolles* v. *Kinton*, 83 Colo. 147, 263 P. 26, 56 A. L. R. 814; *Williams* v. *Gilman*, 71 Me. 21; *Stohlman* v. *Davis*, 117 Neb. 178, 220 N. W. 247; *Bowers* v. *Santee*, 99 Ohio St. 361, 124 N. E. 238; *Gillette* v. *Tucker*, 67 Ohio St. 106, 65 N. E. 865, 93 Am. St. Rep. 639; *Moore* v. *Lee*, 109 Tex. 391, 211 S. W. 214, 4 A. L. R. 185; *Huber* v. *Hamley*, 122 Wash. 511, 210 P. 769.

In *Mucci* v. *Houghton*, 89 Iowa 608, 57 N. W. 305, 306, the court announces the law as follows:

"If a physician or surgeon be sent for to attend a patient, the effect of his responding to the call, in the absence of a special agreement, will be an engagement to attend the case as long as it needs attention, unless he gives notice of his intention to discontinue his services, or is dismissed by the patient; and he is bound to exercise reasonable and ordinary care and skill in determining when he should discontinue his treatment and services."

The Maine court in *Ballou* v. *Prescott*, 64 Me. 305, said:

"The care and skill which a professional man guarantees to his employer are elements of the contract to which he becomes a party on

accepting a proffered engagement. They are implied by the law as resulting from that engagement, though it be but verbal, and nothing said in relation to such elements. So continued attention to the undertaking so long as attention is required in the absence of any stipulation to the contrary, is equally an inference of the law. If a counsellor at law undertakes the management of a cause, nothing more being said or done than simply an offer and acceptance of a retainer for that purpose, it will hardly be denied that an abandonment of the cause before its close would be as much a violation of the contract with the client as a neglect to use the requisite care and skill in its prosecution, and the duty of continued attention is equally an implication of the law as that of exercising the required care and skill.

"That the same principles apply to the employment of a physician or surgeon there can be no doubt. If he is called to attend in the usual manner, and undertakes to do so by word or act, nothing being said or done to modify this undertaking, it is quite clear as a legal proposition that not only reasonable care and skill should be exercised, but also continued attention so long as the condition of the patient might require it, in the exercise of an honest and properly educated judgment, and certainly any culpable negligence in this respect would render him liable in an action. *Barbour* v. *Martin*, 62 Me. 536; Shearman & Redfield on Negligence, § 441."

"A physician who leaves a patient, at a critical stage of the disease, without reason, or sufficient notice to enable the party to procure another medical attendant, is guilty of a culpable dereliction of duty." *Barbour* v. *Martin*, 62 Me. 536.

"When a physician is employed to attend upon a sick person, his employment continues while the sickness lasts, unless put to an end by the assent of the parties, or revoked by the express dismissal of the physician. * * * In the absence of special agreement, his engagement is to attend the case as long as it requires attention, unless he gives notice of his intention to discontinue his visits, or is dismissed, as aforesaid; and he is bound to exercise reasonable and ordinary care and skill in determining when his attendance should cease." *Lawson* v. *Conaway*, 37 W. Va. 159, 16 S. E. 564, 18 L. R. A. 627, 38 Am. St. Rep. 17.

"When a physician is employed to attend upon a sick person, his employment, as well as the relation of physician and patient, continues, in the absence of a stipulation to the contrary, as long as attention is required; and the physician or surgeon must exercise reasonable care in determining when the attendance may be properly and safely discontinued." *Dashiell* v. *Griffith*, 84 Md. 363, 35 A. 1094, 1096.

We have briefly reviewed the evidence showing the urgent need of plaintiff for medical and surgical attention at the time Dr. S. M. Budge refused plaintiff further treatment. As the case stands on the record before us, we must consider the evidence in the most favorable light of ▮▮ which it is reasonably susceptible in behalf of plaintiff. The evidence warrants the inference that plaintiff was being prepared for an operation when Dr. S. M. Budge arrived at the hospital and told the plaintiff that he would give him no further medical attention until something was done about the old account.

We cannot say as a matter of law that plaintiff suffered no damages by reason of the refusal of Dr. S. M. Budge to further treat him. The evidence shows that from the time plaintiff left the office of the defendants up until the time that he arrived at the Cache Valley Hospital his hand continued to swell; that it was very painful; that when he left the Budge Memorial Hospital he was in such condition that he did not know whether he was going to live or die. That both his mental and physical suffering must have been most acute cannot be questioned. While the law cannot measure with exactness such suffering and cannot determine with absolute certainty what damages, if any, plaintiff may be entitled to, still those are questions which a jury under proper instructions from the court must determine.

Inasmuch as the views heretofore expressed require us to remand the case for a new trial, it becomes our duty to consider certain other specifications of error. We ▮ think it is immaterial and irrelevant as to how many children plaintiff might have and, therefore, the objection to such question was properly sustained.

A question propounded to plaintiff by his own attorney as to whether he was at the time Dr. Budge came to the hospital prepared for another operation was objected to, and the objection sustained, as being leading and calling for a conclusion. This we think was error. It would seem ▮▮ to relate wholly to his readiness and convenience to

have the operation performed at that time. We think the ruling erroneous, although not prejudicial. Plaintiff was further asked to compare the treatment he gave his hand while at home with the treatment he had received at the hospital. Objection thereto was sustained and we think erroneously. Inasmuch as plaintiff, before he left the hospital, had been directed quite specifically how to treat his hand while at home, it would seem to be most obvious for him to be permitted to state just how he treated his hand during the time he was at home. Nor do we see any reason why plaintiff should not be permitted to state what treatment was given to his hand after the operation, during the time he remained at the hospital. We think the objection thereto was erroneously sustained.

Other specifications of error are made, and while some of them may be said to be well taken, it nevertheless appears that they were not prejudicial.

Respondents filed a motion to dismiss the appeal because the transcript was not filed within the time fixed by law and the rules of this court, or within the period of any extension of time granted for the filing thereof. The appeal was perfected by the service and filing of the notice of appeal on July 19, 1934. The transcript on appeal was received by the clerk of this court August 2, 1934. Because the necessary fees were not forwarded to the clerk, the transcript was not filed until August 24, 1934. This, as counsel for plaintiff states in their brief, "may technically show that the appellant was four days late in filing the transcript, due to the fact that appellant and his counsel live in different parts of the state."

We have held that a delay in filing the record is not jurisdictional and will not justify a dismissal of the appeal when no prejudice results. *Lukich* v. *Utah Construction Co.*, 48 Utah 452, 160 P. 270; *Merrill* v. *Coon*, 57 Utah 240, 193 P. 1108; *Robinson* v. *Union Pac. R. Co.*, 70 Utah 441, 261 P. 9; *Obradovich* v. *Walker Bros. Bankers*, 80 Utah 587, 16 P. (2d) 212.

In this case no prejudice is made to appear because of the late filing of the transcript. Especially is that true as the motion to dismiss did not come until after the briefs were filed and the case argued on merits.

For the reasons stated, the judgment of the lower court is reversed, and the cause is remanded to the district court of Cache county for a new trial. Appellant to recover his costs.

ELIAS HANSEN, C. J., and MOFFAT, J., concur.

WOLFE, Justice (concurring).

If there was any evidence which was competent to go to the jury on the first cause of action, there certainly was no evidence of damage suffered. Up to the time plaintiff left the hospital against the advice of the doctors on the 15th of March, he was rapidly improving. He complains: (a) That his hand was bathed in water of improper temperature; (b) that respondents failed to lance the finger deep enough properly to drain the pus; (c) that respondents failed to remove a piece of metal from the finger; (d) that gauze was inserted in the incision too tightly to permit drainage; and (e) that respondents failed to examine the incisions frequently enough. There is no expert testimony as to (b) and (d). A layman's opinion on these matters would not be sufficient. There may be acts of commission or omission which a jury of intelligent laymen could say were negligence. I doubt if (a) or (e) are of this character, but even if there is evidence of such acts which could go to the jury without expert testimony that it did not constitute the treatment usually employed by skilled and competent physicians in that locality, there certainly was no evidence that it did any harm. As to (c) there is no evidence that there was any metal in the finger to take out. Dr. Randall testified that he found none. If there was any negligence, the patient improved because or in spite of it—most of us would be satisfied with treatment that brought recovery. I concur in the findings

of the prevailing opinion that the directed verdict for the defendants on the first cause of action was proper. On the 15th of March the relationship of doctor and patient was terminated by the acts of plaintiff. Any advice the doctors gave him prior to his departure was because of their solicitation for his future. Such ministrations, if according to standard, cannot be converted into a basis of liability.

I concur with the findings of that opinion that the directed verdict on the second cause of action was improperly directed, but for a different reason. We must assume the evidence in its most favorable light for the plaintiff in testing this motion. I think there was sufficient evidence to go to the jury on the question as to whether the defendants reassumed the relationship of doctor and patient on March 17th. The plaintiff was told to come to the doctor's office; Dr. S. M. Budge examined the hand; Dr. D. C. Budge scraped it and indicated that it would have to be opened. They thereupon sent the patient to what was, to all intents and purposes of this case, their hospital. The jury might well come to the conclusion that they sent him to their hospital only on the assumption that they intended to treat him. If the jury should find that the relationship of doctor and patient had been resumed on March 17th, which it well might, they would next have to determine whether the doctors abandoned that relationship with too peremptory a notice under such circumstances as would make the plight of the plaintiff more dangerous and in such a way as not to give him opportunity to procure other medical aid in order to make the transition from one doctor to another without substantial hazard. I think there was evidence to go to the jury on this issue.

As to whether the several hours' delay and plaintiff's having to walk out in the rain aggravated the danger or made recovery more difficult, or resulted in the loss of the finger which might have been otherwise saved, is for the jury if there is evidence to go to it on that point. While I have some doubt as to whether there is competent evidence on this

point, I think the doubt must be resolved in favor of plaintiff and that it was for the jury. There certainly may have been prolonged suffering by the delay and on that element the jury may find him entitled to some damages.

There are several assignments of error on rulings rejecting evidence, which, since this opinion was written, the main opinion now mostly covers. Error in every case, if any, was inconsequential. The sustained objections to the questions as to the number of children and financial condition of plaintiff were proper rulings. The answers sought to be elicited were immaterial. The question as to whether plaintiff "suffered great mental anguish" was too ultimate to be proper. Objection was properly sustained on the ground that it was a conclusion. The call should have been for the underlying fact of plaintiff's state of mind so this might or might not be inferred.

Plaintiff was asked whether, at the time Dr. Budge came to him in the hospital on March 17th, he was "prepared for another operation." This was equivalent to asking him if he "was ready" for another operation. It is difficult to see how it could be broken down into more elemental constituents. It was the same as asking him if he was then willing that the doctor go ahead and operate. The sustaining of the objection was error.

The plaintiff was asked to describe the treatment he gave to his hand at home as compared to that given at the hospital. The question was plainly improper in form. The witness, if the question was at all material, should have been asked what treatment he gave his hand at home and the jury be left to make the comparison. But on the theory that there was not a continuing relationship of doctor and patient between March 15th, when plaintiff left the hospital, and March 17th, when he returned to the clinic, the question is immaterial. The objection was properly sustained.

The other assignments were not argued in the brief.

FOLLAND, Justice (concurring in part, dissenting in part).

I concur fully in that part of the opinion sustaining the trial court in directing a verdict in favor of defendants on the first cause of action. I cannot concur in what is said or in the result with respect to the second cause of action. As I view the case the contract of employment between Dr. Budge and Mr. Ricks was terminated by Ricks at the time he paid his bill and left the hospital on March 15th. There is no dispute whatsoever in the testimony with respect to the fact that he did this without the consent and against the advice of Dr. Budge. The testimony of Dr. D. C. Budge and Dr. S. M. Budge shows their protest was much more emphatic than indicated by plaintiff's testimony. A physician ought not to be censured or held liable for any bad results following the voluntary action of a patient in leaving the hospital where he could receive proper treatment. At the time Ricks left the hospital his hand was responding to treatment and the patient was in the process of recovery. Instructions given by the doctor were such as any physician would give under the circumstances, and his admonition to "come and see me immediately" if the condition became worse was merely the equivalent of advising him to go and see a physician if there was any change for the worse. The contract relationship having terminated, Dr. Budge was, of course, under no obligation to treat the patient at the Ricks' home some six miles out of Logan. The appellant did not ask for nor expect any such thing. He determined to treat himself at his home and to take the chances of what might happen when he did so.

Before there can be liability on the second cause of action, there must have been, first, a new contract of employment between the parties, and, second, damage because of failure or refusal of Dr. Budge to operate and further treat the patient. I think the evidence does not support a finding either that there was a new contract of employment or that any damage resulted from failure to treat the patient, and therefore the trial court properly directed a verdict.

Plaintiff's second cause of action alleges that the contract of employment was entered into on or about the 17th of March. The theory of plaintiff as evidenced in his complaint is that there was no continued relationship from the first employment but that a new relationship was entered into. He visited the clinic on March 17th; the Doctors Budge examined his hand and told him an immediate operation was necessary and for him to go to the hospital. I do not think a new contract was entered into at that time. There was no consideration for any implied promise that Dr. Budge or the Budge Clinic would assume the responsibility of another operation and the costs and expenses incident thereto. As soon as Dr. Budge reached the hospital he opened negotiations with the plaintiff which might have resulted in a contract, but before any contract arrangement was made the plaintiff decided to leave the hospital and seek attention elsewhere. As soon as he could dress himself he walked away. There is conflict in the evidence as to the conversation. Plaintiff testified in effect that Dr. Budge asked for something to be done about an old account. The doctor's testimony in effect was that he asked that some arrangement be made to take care of the doctor's bill and expenses for the ensuing operation and treatment at the hospital. The result, however, was negative. No arrangement was made. The plaintiff made no attempt whatsoever to suggest to the doctor any way by which either the old account might be taken care of or the expenses of the ensuing operation provided for. Of course, for the purpose of deciding the rightfulness of the trial court's action in directing a verdict, we must take plaintiff's version as true. The jury might well have found that the doctor's version was far more reasonable and the true version of what actually happened. Under either view Dr. Budge had a right to refuse to incur the obligation and responsibility incident to one or more operations and the treatment and attention which would be necessary. If it be assumed that the contract relationship of physician and patient existed prior to this conversation, either as resulting

from the first employment or that there was an implied contract entered into at the clinic, yet Dr. Budge had the right with proper notice to discontinue the relationship. While plaintiff's condition was acute and needed immediate attention, he received such immediate attention at the Cache Valley Hospital. There was only a delay of an hour or two, and part of that delay is accounted for by reason of the fact that the doctor at the Cache Valley Hospital would not operate until some paper, which plaintiff says he did not read, was signed. Plaintiff said he could not sign it but that it was signed by his brother before the operation was performed. We are justified in believing that by means of this written obligation, provision was made for the expenses and fees about to be incurred. I am satisfied from my reading of the record that no injury or damage resulted from the delay occasioned by plaintiff leaving the Budge Hospital and going to the Cache Valley Hospital. He was not in such desperate condition but that he was able to walk the three or four blocks between the two hospitals. Dr. Randall testified he gave the same treatment and performed the same operation as would have been given and performed two or three hours earlier.