484 P.2d 1200

Connie WILCOX et al., Plaintiffs and Appellants,

v.

SALT LAKE CITY CORPORATION, a municipal corporation, Defendant and Respondent.

SALT LAKE CITY CORPORATION, a municipal corporation, Third-Party Plaintiff,

v.

Q. B. CORAY and Angus K. Wilson, Third-Party Defendants and Respondents.

No. 12246.

Supreme Court of Utah.

May 10, 1971.

J. Dennis Frederick, of Kipp & Christian, Salt Lake City, for appellants.

Jack L. Crellin, Salt Lake City, Atty., Roger F. Cutler, Asst. Salt Lake City Atty., Salt Lake City, for respondent.

Worsley, Snow & Christensen, Reed L. Martineau, Salt Lake City, for third-party defendants and respondents.

HENRIOD, Justice.

Appeal from a summary judgment dismissing a complaint against the City and denying plaintiffs' motion to join two doc-

tors as defendants. Affirmed, parties to bear their own costs.

Plaintiff, Connie Wilcox, was a waitress at a time when a city ordinance was in force requiring annual X-ray tuberculosis check ups for renewal of waitresses' permits,[1]—which ordinance was passed under state legislation authorizing the making of regulations for the prevention of contagious diseases.[2]

Pursuant to such ordinance, the City for many years has orally contracted with Drs. Coray and Wilson, well-known radiologists, to examine annually about 2,000 miniature chest X-rays. One of the doctors specifically said he did not know that the purpose of the City was to use the X-ray as one of the conditions of granting waitresses' permits. Actually that was the purpose. The doctors charged 3 cents for each X-ray. The consideration obviously was somewhat nominal, and it would appear that a major factor was public service. The doctors neither saw nor examined those whose chests were X-rayed, and in no sense was there a doctor-patient relationship or any contact or employment of the doctors with those X-rayed. Neither doctor had any recollection of the particular X-ray subject of this litigation, had no office records of this and the thousands of other X-rays examined, and personally did not certify to any except by filling in squares on a form furnished by the City. Such forms were given back to the City by the doctors' office help. Both doctors conceded that they may have examined this particular film, but there was no evidence which one did or whether either or both did. It is conceded by all parties that the X-ray in this case showed that the X-ray that was used by the City in issuing Mrs. Wilcox a waitress's permit indicated a tubercular condition, which, after discovery and treatment, resulted in a temporary loss of employment.

■ The plaintiffs urge on appeal that 1) the City undertook to diagnose Mrs. Wilcox for tuberculosis, and did so negligently, for which damages lie, and that 2) it was error for the trial court to deny their motion to join the doctors as parties defendant. We believe and hold the latter contention to be without merit, since the doctors' duty was to the City, they had no doctor-patient relationship with the thousands of those who were X-rayed, there was no element of control whatever pointing up a possible agency situation, and anyway, were there any such situation, they would enjoy the immunity hereinafter adverted to.

■ As to 1) above: the negligence of the City: plaintiffs, without making

1. Sec. 18–6–51, Revised Ordinances of Salt Lake City 1965.

2. Title 10–8–61, Utah Code Annotated 1953.

them separate points on appeal, seem to say that a) the City is liable since it was acting in a proprietary capacity, which we reject,[3] but, failing that urgence b) the City is liable even though it acted in a governmental capacity, since immunity under such a concept was waived by virtue of our Governmental Immunity Act,[4] and that c) anyway, we should judicially abolish the doctrine altogether as being archaic and doing so judicially to legislate our Governmental Immunity Act out of existence. This last contention we are not inclined to espouse, in spite of a claimed trend in that direction, noted by plaintiffs' adversions to scholarly papers written by eminent educators, and the judicial pronouncements of some sister states.

With respect to the remaining contention that the City waived its immunity under the Utah Immunity Act mentioned, attention is called to the exception in the act,[5] which says immunity is waived "except if the injury: (1) arises out of the *exerci*se or *performance* * * * [of] a

3. 18 McQuillin, Municipal Corporations, Sec. 53.85; Rhyne, Municipal Law, Secs. 4–6, p. 68.

4. Title 63–30, Utah Code Annotated 1953.

5. 63–30–10(1), U.C.A.1953, as amended (Replacement Vol. 7A, p. 235).

*discretionary function,* whether or not the discretion is abused, * * *."

The issuance of the permit in the instant case was by virtue of an ordinance [6] passed pursuant to a state statute,[7]—not mandatory,—giving the City a permissive or discretionary power to regulate under the circumstances of this case, and to exercise or perform a function in aid thereof, which we believe and hold encompasses the issuance of the permit here. It was within the discretion of the City not only to pass the ordinance, but it also was discretionary on its part to issue or not to issue a permit,[8] and no matter how one looks at it, plaintiffs' argument that the issuance of the permit was simply "ministerial" would indulge a presupposition that the City would *have* to issue a permit if any old waitress came along and applied for one, insisting that if she passed the bacilli bit the City would have to issue her a permit.

CALLISTER, C. J., and TUCKETT, ELLETT, and CROCKETT, JJ., concur.

6. See footnote 1, supra.

7. See footnote 2, supra.

8. See Velasquez v. U. P. R. Co., 24 Utah 2d 217, 469 P.2d 5 (1970).