Tom I. McFARLING, etc., et al.,
Plaintiffs-Appellants,

v.

Charles T. AZAR et al., Defendants,

Employers' Fire Insurance Company,
Inc., Defendant-Appellee.

No. 74–3375.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1975.

Eugene C. Heiman, Wm. A. Meadows, Jr., Judith H. Hayes, Miami, Fla., for plaintiffs-appellants.

Michael C. Spring, Steven R. Berger, Miami, Fla., for defendant-appellee.

Before GODBOLD, Circuit Judge, SKELTON, Associate Judge,* and GEE, Circuit Judge.

GODBOLD, Circuit Judge:

This case poses in an unusual context a question of the scope of coverage of a doctor's professional liability insurance policy. The precise question is whether, in a suit by a life insurance company on whose behalf a doctor has examined an applicant for insurance, the policy covers acts of the doctor constituting fraud against the life insurance company.

An applicant for life insurance, an insurance agent, and a doctor employed by the life insurance company to examine the applicant conspired to defraud the life insurance company in procuring life insurance for the applicant through the submission of a false medical report. The doctor submitted an electrocardiogram certifying it to be that of the applicant, age 72. In fact it was an electrocardiogram of the insurance agent, who was much younger and in better health than the applicant. Two policies for $100,000 each were issued, and the insured died soon thereafter. The life insurance company paid the benefits to the beneficiaries. The life insurance company, now in receivership, discovered the fraud and sued to recover from the conspirators the amount paid out on the policies. Also named as a defendant was the liability insurance company[1] which had issued a "professional liability" insurance policy to the doctor covering "malpractice" and "error or mistake."[2]

The liability insurer had its trial severed but agreed to be bound by the results of the main trial, reserving to the court the decision whether it was liable on its professional liability policy. The jury returned a verdict against the individual defendants for their conspiracy to defraud the life insurance company. This required a conclusion that the acts of each individual were voluntary and intentional. The trial court ruled that the error and mistake provision of the liability policy did not apply, noting that the acts of the individuals were necessarily intentional and explicitly planned. It also ruled that malpractice coverage of the policy was limited to acts of negligence, thus excluding the fraud committed by the insured doctor. Judgment was entered for the liability insurer. We affirm for the reasons set out below.

Viewed under the "malpractice" language of the policy, the claim in this case presents two novel questions. First, does malpractice in Florida include intentional acts designed to defraud another? Cf., Gregory v. McInnis, 140 S.C. 52, 134 S.E. 527, 529–530 (1926). We think this issue is pretermitted by the second question: does the duty the breach of which is defined as malpractice run to a life insurance company which pays a doc-

---

\* Of the U.S. Court of Claims, sitting by designation.

1. Florida permits this. See Shingleton v. Bussey, 223 So.2d 713 (Fla., 1969); Beta Eta House Corp. v. Gregory, 237 So.2d 163 (Fla., 1970).

2. Under the liability provision of the policy the insurer agreed:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury arising out of (a) Malpractice, error or mistake of the insured . . . "

tor to make on its behalf a single examination of an applicant for insurance?[3]

We think that this case, under *Erie*, is controlled by *Greenwald v. Grayson*, 189 So.2d 204 (Fla.App., 1966). There a married couple employed a doctor to examine a child they were considering adopting. The doctor failed to discover a latent defective condition. The parents, who adopted the child in reliance on this examination, sued both in contract and in tort for negligence. The court viewed the latter as a malpractice claim and ruled that it was not available to the parents. "A physician-patient relationship did not exist between the parties to this action. Appellants' [the parents'] relationship with the doctor was exclusively in contract." 189 So.2d at 205. As did the parents in *Greenwald*, the life insurance company here employed a doctor to advise it on the medical condition of a third party. Whatever claims it may have against this doctor for the intentional misperformance of his duties done on its behalf, they are not the kind of claims Florida recognizes as malpractice.

The question here presented is not whether the doctor is liable to the life insurance company but whether the liability insurer is liable on the liability policy. That does not change the result. The doctor was found liable for fraud, not for malpractice or for negligence. This left to the court to decide whether the liability policy applied to this claim.

The answer is in the negative. The malpractice coverage of the policy in question only covers legal liability of the doctor arising from malpractice. We see no reason, and none is suggested to us, for concluding that the insurer's liability for malpractice claims against this particular doctor should be any broader than the doctor's liability for malpractice.[4] We hold that in the instant circumstances the scope of these liabilities is the same.

Liability of the insurance company might alternatively be predicated under the "error or mistake" language of the policy. Appellant analogizes its case to that of a party who is injured by the intentional act of another and who is permitted to recover under a policy insuring against liability for accidentally imposed injuries. Whatever force that analogy might otherwise have, where reliance is upon only the term "accident" and there is no policy language covering specifically named acts, recovery is usually limited to cases where the named insured is not the tortfeasor but is only vicariously liable for the acts of the tortfeasor, e. g., a car owner liable for the acts of whoever drives his car. *Jernigan v. Allstate Ins. Co.*, 269 F.2d 353, 356, n. 4 (CA 5, 1959). Here the named insured is the fraudfeasor. Thus these cases provide no authority for an expansive reading of the phrase "error or mistake."

Accordingly, there was no error in the District Court's judgment.

Affirmed.

---

**3.** Since we reach our decision on the basis of this second question, we merely note the Florida statute defining malpractice insurance in terms of "negligence." F.S.A. § 624.605(1)(j). Compare F.S.A. § 624.601.

We do not reach in this case the question of whether the same result would occur where the parties to the liability insurance policy might have a different intention, as where a doctor is employed by an insurance company on a full-time basis to examine applicants for insurance, or a doctor is employed by a company to provide examinations and emergency medical aid to its employees while at work. Such a doctor would have few or no patients in the usual sense to whom he might be liable for malpractice, and arguably the only entity intended to be covered by the policy might be the employer. Unless intended to cover the employer the policy might be illusory. *See Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705 (Tex.Civ.App., 1963) and *Wilcox v. Salt Lake City Corp.*, 26 Utah 2d 78, 484 P.2d 1200 (1971), holding in situations of such nature that no doctor-patient relationship exists between doctor and examinees and no duty runs from the doctor to the examinee. In the instant case the doctor was a plastic surgeon who explicitly procured insurance to cover his practice, which included performing major and minor surgery.

**4.** *But see* footnote 3, *supra*.