2003 UT App 401

**Charlene S. NEWMAN, Plaintiff and Appellant,**

v.

**Brent C. SONNENBERG, Defendant and Appellee.**

**No. 20020782–CA.**

Court of Appeals of Utah.

Nov. 21, 2003.

---

Lynn P. Heward, Robert J. Debry & Associates, Salt Lake City, for Appellant.

Brian P. Miller, Terence L. Rooney, and Bradley R. Blackham, Snow Christensen & Martineau, Salt Lake City, for Appellee.

Before Judges DAVIS, ORME, and THORNE, Jr.

## OPINION

THORNE, Jr., Judge:

¶ 1 Charlene S. Newman appeals the trial court's grant of summary judgment in favor of Brent C. Sonnenberg, D.D.S. We affirm.

## BACKGROUND

¶ 2 Newman's regular dentist referred Newman to Sonnenberg, an endodontist, for a root canal. Upon arriving at Sonnenberg's office, Newman signed an "Informed Consent" form. Sonnenberg took several x-rays, conducted a "pulp test" on several teeth, examined an existing temporary crown, and administered a local anesthetic. Sonnenberg determined that Newman was in need of a root canal and directed his office administrator to review the costs and available payment options with Newman. Once Sonnenberg learned that Newman was unable to pay for the procedure outright and that she did not qualify for a payment plan, Sonnenberg refused to perform the root canal.

¶ 3 Upon leaving Sonnenberg's office, Newman contacted another endodontist who also had been recommended to her by her regular dentist. One week later, this second endodontist successfully performed a root canal on Newman's tooth and replaced the temporary crown with a permanent crown.

¶ 4 Newman filed a medical malpractice case against Sonnenberg under the Utah Health Care Malpractice Act, claiming abandonment. Sonnenberg subsequently filed a motion for summary judgment, claiming, among other things, that Newman's "abandonment claim failed because ... Sonnenberg withdrew prior to commencing treatment." Newman countered that treatment began either when Sonnenberg began the examination or, certainly, when Sonnenberg administered the local anesthetic. After hearing arguments, the trial court granted Sonnenberg's motion for summary judgment. The court stated that Newman

needs to establish by expert testimony that [Sonnenberg] began treatment. To allow a jury to speculate on the issue of the practice of endodontics does not comport with the Utah Health Care Malpractice Act. The facts of this case do not fit within the exception to the general rule that a plaintiff must establish by expert testimony that the treating professional engaged in malpractice. The standard of care involved here involves the question of whether treatment had begun and whether he properly withheld treatment.... The nature of "treatment" in this field is not one that lay persons understand. When diagnosis ends and when treatment begins is a

subject that requires expert testimony to establish there is a dispute.

Newman appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 5 Newman challenges the trial court's determination that expert testimony is needed to prove abandonment. "When determining the propriety of a trial court's grant of summary judgment, 'we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference.' " *Nyman v. Anchor Dev., L.L.C.*, 2003 UT 27,¶ 7, 73 P.3d 357 (quoting *Ault v. Holden*, 2002 UT 33,¶ 15, 44 P.3d 781).

## ANALYSIS

¶ 6 Newman argues that expert testimony is not needed on the issue of abandonment because "the determination as to when the medical practitioner incurs a duty to the patient is not dependent upon expert testimony." (Emphasis omitted.) Newman claims that "[t]he main issue is not whether some medically defined procedure has begun, but whether the doctor-patient relationship exists" and that "the duty to treat [and not to abandon] arises upon the existence of the relationship of physician and patient alone."[1]

■ ¶ 7 "In the majority of medical malpractice cases the plaintiff must introduce expert testimony to establish [the] standard of care." *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980). "Expert testimony is required because the nature of the [medical] profession removes the particularities of its practice from the knowledge and understanding of the average citizen." *Id.* However, "[e]xpert testimony is unnecessary to establish the standard of care owed ... where the propriety of the treatment received is within the common knowledge and experience of the layman." *Id.*

■ ¶ 8 In Utah, it "is well settled that a physician or surgeon, upon undertaking an operation or other case, *is under the duty*, in the absence of an agreement limiting the service, of continuing his [or her] attention, *after the first ... treatment*, so long as the case requires attention." *Ricks v. Budge*, 91 Utah 307, 64 P.2d 208, 211 (1937) (emphasis added). "A physician has the right to withdraw from a case, but if the case is such as to still require further medical or surgical attention, he must, before withdrawing from the case, give the patient sufficient notice so the patient can procure other medical attention if he desires." *Id.* at 212. Accordingly, a medical provider " 'is bound to exercise reasonable and ordinary care and skill in determining when he [or she] should discontinue his [or her] treatment and services.' " *Id.* (quoting *Mucci v. Houghton*, 89 Iowa 608, 57 N.W. 305, 306 (Iowa 1894)).

■ ¶ 9 Consequently, the duty to " 'exercise reasonable and ordinary care and skill in determining when he [or she] should discontinue his [or her] treatment and services' " arises only if the medical provider has, in fact, begun " 'treatment and services.' " *Id.* (citation omitted). Once it is established that treatment and services have begun, only then should the fact-finder be permitted to analyze whether the medical provider exercised reasonable and ordinary care in discontinuing treatment and services.[2] *See id.* at 213.

1. In support, Newman cites the following cases: *Johnson v. University of Chi. Hosp.*, 774 F.Supp. 510, 512 (N.D.Ill.1991), *affirmed in part and reversed in part by*, 982 F.2d 230 (7th Cir.1992) (addressing duty of a hospital to treat patients); *Lewis v. Capalbo*, 280 A.D.2d 257, 720 N.Y.S.2d 455, 457 (2001) (noting that a doctor-patient relationship is created when a doctor "undertakes to examine and treat a patient"); *Ortiz v. Shah*, 905 S.W.2d 609, 611 (Tex.App.1995) (noting that a doctor can only be liable for medical negligence after a doctor-patient relationship exists).

2. In contrast, Newman argues that "the term 'treatment' was used by the Utah Supreme Court

[in *Ricks v. Budge*, 91 Utah 307, 64 P.2d 208 (1937),] to indicate when the physician-patient relationship was established, and [,] hence[,] the duty not to abandon arose." We disagree. A doctor-patient relationship can exist long before a medical provider begins "treatment" that triggers the duty not to abandon. For example, from the moment a patient enters a doctor's office, fills out forms, and speaks to a doctor, that doctor owes the patient a duty of reasonable care (e.g., a duty of confidentiality and duty not to exploit the patient) even though no "treatment" has begun.

Even if *Ricks* could be interpreted as Newman argues, we conclude that its reasoning is outdat-

¶ 10 We agree with Newman's claim that Sonnenberg owed her a duty of reasonable care as soon as the doctor-patient relationship was created. *See Farrow v. Health Servs. Corp.*, 604 P.2d 474, 476 (Utah 1979) ("The duty of care generally owed by a physician to his patient is to exercise that degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by other practitioners in his field of practice. He must use ordinary (ordinary for a physician) and reasonable care and diligence, and his best judgment, in applying his skill to his patient's case."). However, Newman fails to recognize the distinction between this general duty of reasonable care and the more specific duty not to abandon, which, pursuant to *Ricks*, does not attach until " 'treatment and services' " have begun. *Ricks*, 64 P.2d at 213 (citation omitted). Here, we are concerned with the more specific question regarding whether expert testimony is needed, not to establish a doctor-patient relationship, but rather to establish the elements of abandonment.

¶ 11 Utah courts have not yet determined whether expert testimony is needed to prove abandonment. However, several other jurisdictions have required expert testimony in similar circumstances. In *Cox v. Jones*, 470 N.W.2d 23 (Iowa 1991), the plaintiff failed to designate an expert witness in a timely fashion and then argued, to avoid summary judgment, that expert testimony was not necessary to prove abandonment. *See id.* at 25–26. The court, in denying plaintiff relief, reasoned

[a] physician who leaves a patient in a critical stage of a disease without reason or sufficient notice to enable the patient to secure another physician is subject to liability to that patient. To prove abandonment, a plaintiff patient must show that

the abandonment occurred during a *critical stage of the patient's* [ ... ] *treatment.* Even if a jury could determine that defendants refused to treat [the plaintiff] because her bill was past due, expert evidence would be required to establish that [the plaintiff] *was at a critical stage of her medical care when defendants allegedly withdrew medical treatment.* Consequently, without expert testimony ... an abandonment cause of action cannot be proven.

*Id.* at 26–27 (emphasis added).[3]

¶ 12 Similarly, in *Walker v. Saint Vincent Charity Hospital,* No. 67035, 1995 WL 168492, 1995 Ohio App. LEXIS 1431 (Ohio Ct.App. Cuyahoga County Apr. 6, 1995), a pro se plaintiff sued two doctors for abandonment. *See id.* at *1, 1995 Ohio App. LEXIS at *2. In defense, the doctors filed a motion for summary judgment, claiming that the plaintiff had not made a prima facie case of negligence because he had offered no expert testimony. *See id.* at *1, 1995 Ohio App. LEXIS at *2–3. The court concluded that the claim for abandonment "must be supported by expert medical testimony concerning a defendant's failure to meet professional standards of care in the medical community." *Id.* at *2, 1995 Ohio App. LEXIS at *4; *see also Tavakoli–Nouri v. Gunther,* 745 A.2d 939, 941 (D.C.2000) (concluding that under those circumstances the standard of care for abandonment had to be established by expert witness); *Surgical Consultants, P.C. v. Ball,* 447 N.W.2d 676, 682 (Iowa Ct.App.1989) (suggesting that expert evidence is necessary to establish patient was at a "critical stage" when physician withdrew); *King v. Fisher,* 918 S.W.2d 108, 110 (Tex.App.1996) (noting that "[t]o prove abandonment [in a medical

---

ed and not useful in today's world of specialized medicine. Medical providers must be given the freedom to determine when they are able to render proper medical assistance. Otherwise it would be impossible for a doctor to refer a patient to another medical provider or decline to take a case in an area about which he or she has no expertise without exposing himself or herself to a claim of abandonment.

**3.** We do not decide in this case whether, to prove abandonment, the plaintiff must demonstrate

that he or she was at a "critical" stage of treatment, because the issue was not presented to us nor was it briefed by the parties. However, *Ricks* seems to require that the patient be at a critical stage before abandonment is an issue. *See Ricks,* 64 P.2d at 210 (" 'A physician who leaves a patient, at a critical state of the disease, without reason, or sufficient notice to enable the party to procure another medical attendant, is guilty of a culpable dereliction of duty.' " (quoting *Barbour v. Martin,* 62 Me. 536 (1873))).

malpractice case], expert testimony is critical").

¶ 13 We agree with the reasoning of these cases. We are not persuaded by Newman's claim that the duty not to abandon arises immediately upon the establishment of a doctor-patient relationship. Instead, this more specific duty not to abandon can be claimed only after treatment or services have been provided. At that time, a doctor must exercise reasonable and ordinary care and skill in determining whether to discontinue treatment and services. *See Ricks v. Budge,* 91 Utah 307, 64 P.2d 208, 212 (1937). Deciding whether treatment or services have been provided is a medical question requiring expert testimony, unless the case involves a medical procedure "so common or the outcome so affronts our notions of medical propriety that expert testimony is not required." *Nixdorf v. Hicken,* 612 P.2d 348, 353 (Utah 1980).

¶ 14 Here, Sonnenberg was designated as an expert witness and testified by affidavit and deposition that he was merely diagnosing Newman and that he never began "treatment." Sonnenberg explained that Newman had several cracked teeth and the purpose of anesthetizing Newman's tooth was to determine which tooth was causing the pain and whether or not a root canal was needed. Newman, on the other hand, presented no expert testimony to rebut Sonnenberg's assertions.

¶ 15 Obviously, most lay people do not possess the necessary expertise to accurately determine whether Sonnenberg's actions constituted mere diagnosis or signified the beginning of treatment.[4] This is precisely the kind of situation that requires expert testimony because the "particularities of [Sonnenberg's] practice [are removed] from the knowledge and understanding of the average citizen." *Id.* at 352.

¶ 16 Accordingly, to survive summary judgment, Newman was required to present expert testimony on the issue of when treatment began. The trial court properly granted Sonnenberg's motion for summary judgment, for without proof that Sonnenberg had begun treatment, the duty to exercise reasonable and ordinary care and skill in determining when to discontinue treatment did not arise. *See Ricks,* 64 P.2d at 210.

## CONCLUSION

¶ 17 Expert testimony is needed to prove each element of abandonment, including when treatment begins, except in circumstances when the matter at issue falls within the common knowledge of jurors. Newman failed to introduce expert testimony in support of her abandonment claim, thus, the trial court properly granted Sonnenberg's motion for summary judgment.

¶ 18 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (dissenting):

¶ 19 "Due to the technical and complex nature of a medical doctor's services, expert medical testimony must be presented at trial in order to establish the standard of care and proximate cause—except in unusual circumstances." *Chadwick v. Nielsen,* 763 P.2d 817, 821 (Utah Ct.App.1988). "For example, 'expert testimony is unnecessary to establish the standard of care owed the plaintiff where the propriety of the treatment received is within the common knowledge and experience of the layman.' " *Id.* (quoting *Nixdorf v. Hicken,* 612 P.2d 348, 352 (Utah 1980)).

¶ 20 There was nothing particularly "technical and complex" about Plaintiff's aborted visit to Dr. Sonnenberg. According to the evidence she presented—and "when 'reviewing a grant of summary judgment, we view

---

4. We disagree with the dissent's claim that "there was nothing particularly 'technical and complex' about plaintiff's aborted visit to Dr. Sonnenberg." The dissent attempts to over-simplify the facts and ignores that Ms. Newman had several cracked teeth that could have been radiating pain. The dissent also ignores that Dr. Sonnenberg claimed he needed to numb the tooth in question to determine if that tooth was causing pain or whether a nearby cracked tooth needed attention. Dr. Sonnenberg ultimately determined Ms. Newman needed a root canal, but he had not started the root canal when he refused to go forward. This uncontested evidence belies the dissent's claim that this case falls within the common knowledge of jurors, for most jurors do not possess the knowledge to accurately determine when treatment began in this case.

the facts *and all reasonable inferences* drawn therefrom in the light most favorable to the nonmoving party,' " *Ault v. Holden,* 2002 UT 33, ¶ 15, 44 P.3d 781 (quoting *DCM Inv. Corp. v. Pinecrest Inv. Co.,* 2001 UT 91, ¶ 6, 34 P.3d 785) (emphasis added)—Plaintiff reported to Dr. Sonnenberg's office to have a root canal done, Dr. Sonnenberg agreed to do the procedure, he administered the anesthetic necessary for undertaking the procedure, and then, while she sat in the dental chair waiting for the anesthetic to become fully effective, he changed his mind about doing the procedure because he feared he would not be paid for his work. It is at least unprofessional to evaluate a patient's creditworthiness while she sits in a dental chair, anesthetized and waiting for a procedure to begin that she has been advised will be done for her. Whether sending her on her way because of cold feet about her ability to pay also constitutes compensable abandonment is something a properly instructed jury may well be able to decide for itself, without the guidance offered by experts.

¶ 21 I admittedly puzzle over the economic viability of Plaintiff's claim—after all, a successful root canal was performed by another dentist eight days after the aborted visit to Dr. Sonnenberg, and the damages proximately caused by one unnecessary shot of novocaine would appear to be rather minimal. Nonetheless, on the record before us, I believe that her claim should withstand the motion for summary judgment and that she was entitled to proceed to trial.