2006 UT App 459

**Robert L. JOSEPH, Plaintiff and Appellant,**

v.

**David L. McCANN, M.D., F.A.P.A., Defendant and Appellee.**

**No. 20050979–CA.**

Court of Appeals of Utah.

Nov. 16, 2006.

Rehearing Denied Dec. 8, 2006.

---

D. Bruce Oliver, Salt Lake City, for Appellant.

J. Anthony Eyre and J. Kevin Murphy, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and DAVIS.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiff Robert L. Joseph appeals the trial court's order granting summary judgment in favor of Defendant Dr. David L. McCann. Specifically, Joseph argues that the trial court erred when it dismissed his medical malpractice claims against McCann and held that McCann did not owe a duty of care to Joseph and that the two-year statute of limitations for medical malpractice claims had expired. We affirm.

## BACKGROUND

¶ 2 Joseph began employment with Salt Lake City (the City) as a police officer in 1997. In March 1999, while on duty, Joseph shot and injured a motorist. As a result of this shooting incident, the City suspended Joseph as a police officer and ultimately terminated his employment.

¶ 3 In January 2000, the City reinstated Joseph as a police officer. As part of his reinstatement, Joseph was required to submit to an independent medical evaluation (IME) regarding his fitness for duty and was referred to McCann, a medical doctor specializing in the field of psychiatry. The City had retained McCann in his professional capacity to perform the IME on Joseph. Before performing the IME, Assistant City Attorney Lyn Creswell supplied Joseph's personnel records to McCann for review; Creswell also wrote a letter to McCann expressing concerns that Joseph had "appeared threatening" in his behavior.

¶ 4 In early February 2000, McCann commenced the IME by reviewing Joseph's personnel records and other related materials. McCann also performed psychological testing and a psychiatric interview of Joseph. At the time of the interview, McCann required Joseph to sign a written "Statement of Conditions for Independent Medical Evaluation" (Statement of Conditions), which included an acknowledgment by Joseph that McCann's role in performing the evaluation was only to provide an assessment to the City and not to offer treatment to Joseph. However, the Statement of Conditions also refers to Joseph as the "patient."

¶ 5 At the end of February, McCann completed the IME report and provided it to the City. The report included McCann's opinion that Joseph was not psychologically fit to perform the duties of a police officer. Based in part on McCann's IME report, the City terminated Joseph's employment as a police officer on March 31, 2000.

¶ 6 After receiving a copy of McCann's IME report, Joseph consulted three psychologists concerning the IME report. Information from these consultations caused Joseph to believe that McCann erred in his evaluation. Joseph appealed his termination to the Salt Lake City Civil Service Commission (the Commission), alleging that "McCann did not conduct a complete and competent evaluation." During the course of his appeal to the Commission, Joseph failed to comply with the City's discovery requests. Accordingly, the Commission dismissed Joseph's appeal of his termination. This court affirmed the Commission's action in *Joseph v. Salt Lake City Civil Service Commission*, 2002 UT App 254, 53 P.3d 11 (2002).

¶ 7 Subsequently, on April 23, 2003, Joseph initiated a claim against McCann for medical malpractice by filing a Notice of Intent to Commence Legal Action and a Request for Prelitigation Screening Panel with Utah's Division of Occupational and Professional Licensing, in accordance with the Utah Health Care Malpractice Act. *See* Utah Code Ann. §§ 78-14-8,-12(2) (2002). On October 14, 2003, Joseph filed a civil complaint against McCann alleging medical malpractice. The trial court granted McCann's motion for summary judgment, entering an order of dismissal with prejudice. Joseph appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 On appeal, Joseph asserts that the trial court erred when it granted McCann's motion for summary judgment and dismissed Joseph's complaint. Specifically, Joseph claims that the trial court erred in determining that McCann, acting as an independent medical examiner, did not have a physician-patient relationship with Joseph and therefore did not owe Joseph a duty of care.[1]

¶ 9 Under Utah Rule of Civil Procedure 56(c), summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "When determining the propriety of a trial court's grant of summary judgment, we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference." *Newman v. Sonnenberg*, 2003 UT App 401, ¶ 5, 81 P.3d 808 (quotations and citations omitted).

## ANALYSIS

¶ 10 Joseph asserts the trial court erred when it granted McCann's motion for summary judgment and dismissed Joseph's medical malpractice claims on the ground that McCann did not owe a duty of care to Joseph. "To establish negligence ... a plaintiff must first establish a duty of care owed by the defendant to the plaintiff.... The issue of whether a duty exists is entirely a question of law to be determined by the court." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). Joseph's claim raises a matter of first impression for Utah courts.

¶ 11 Under Utah law, to maintain a claim for negligence, a plaintiff is required to establish that a defendant owes a duty of care to the plaintiff. *See id.* As applied to medical malpractice claims, the plaintiff must demonstrate a physician-patient relationship with the physician in order to establish the physician's duty of care to the plaintiff. *See Newman*, 2003 UT App 401 at ¶ 10, 81 P.3d 808 (noting that physician "owed [plaintiff] a duty of reasonable care as soon as the [physician]-patient relationship was created"). Therefore, when a physician has no physician-patient relationship with an individual, the physician owes no duty to that individual, and a malpractice lawsuit fails as a matter of law. *See id.; see also Wilson v. Athens–Limestone Hosp.*, 894 So.2d 630, 633 (Ala. 2004) ("Liability for medical malpractice depends, first, on the existence of a duty to the patient, which, in turn depends on the existence of a physician-patient relationship creating the duty." (quotations and citation omitted)); *Ortiz v. Shah*, 905 S.W.2d 609, 611 (Tex.App.1995) (noting that a physician can only be liable for medical negligence when a physician-patient relationship exists).

¶ 12 The existence of a physician-patient relationship between a physician and an individual can only be recognized when the individual is in fact a patient. *See, e.g., Ricks v. Budge*, 91 Utah 307, 64 P.2d 208, 211 (1937). The Utah Health Care Malpractice Act defines patient as "a person who is under the care of a health care provider, under a contract, express or implied." Utah Code Ann. § 78–14–3(22) (Supp.2006). Health care is defined as "any act or treatment performed or furnished ... by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 78–14–3(10). Moreover, the physician-patient relationship exists "if the professional services of a physician are accepted by another person for the purposes of medical ... treatment." 61 Am. Jur.2d *Physicians, Surgeons, and Other Healers* § 130 (2002). This relationship is consensual, and one in which "the patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient." [2] *Id.*

---

1. Joseph also argues that the trial court erred when it granted McCann's motion for summary judgment on the alternative ground that Joseph's medical malpractice claim was barred by the two-year statute of limitations period established by the Utah Health Care Malpractice Act. *See* Utah Code Ann. § 78–14–4 (2002). Because we affirm the trial court's ruling that McCann did not owe Joseph a duty of care, we do not address this second issue on appeal.

2. We have noted that "[a] doctor-patient relationship can exist long before a medical provider begins 'treatment.'" *Newman v. Sonnenberg,*

¶ 13 Although the Statement of Conditions that Joseph signed prior to his psychiatric interview refers to Joseph as the "patient," it also makes clear that McCann was only evaluating Joseph at the request of the City; he was not evaluating Joseph for treatment purposes. In fact, Joseph even admitted that he "knew [he] wasn't going [to McCann] for treatment." Therefore, Joseph was not a patient, and the reference to Joseph as "patient" in the Statement of Conditions merely reflects an improper label. Because Joseph did not seek treatment from McCann, nor did McCann provide treatment to Joseph, McCann was not under an express or implied contract to provide health care to Joseph. Thus, no physician-patient relationship existed, and McCann owed no duty of care to Joseph.

¶ 14 As further support for our conclusion that no physician-patient relationship existed between McCann and Joseph, we observe that the contract for McCann's psychiatric services was not between McCann and Joseph, but rather between McCann and the City. Although this particular issue has not been specifically addressed by Utah courts before, the Utah Supreme Court addressed the existence of a physician-patient relationship in *Wilcox v. Salt Lake City Corp.*, 26 Utah 2d 78, 484 P.2d 1200 (1971). In that case, the plaintiff sought to sue doctors who had contracted with the City to read x-rays for health screening and had misread the plaintiff's x-ray, missing signs of a tubercular condition. *See id.* at 1201. The court affirmed summary judgment in favor of the doctors concluding that "since the doctors' duty was to the City, they had no doctor-patient relationship" with the plaintiff. *Id.* Similarly, in this case, McCann contracted with the City to provide an IME of Joseph. He did not contract to provide health care to Joseph. Therefore, McCann's duty was to the City, not to Joseph.

¶ 15 A majority of jurisdictions support this analysis and have adhered to the general rule that

> a physician who is retained by a third party to conduct an examination of another person and report the results to the third party does not enter in a physician-patient relationship with the examinee and is not liable to the examinee for any losses he suffers as a result of the conclusions the physician reaches or reports.

*Ervin v. American Guardian Life Assurance Co.*, 376 Pa.Super. 132, 545 A.2d 354, 357 (1988) (quotations and citations omitted); *see also Hafner v. Beck*, 185 Ariz. 389, 916 P.2d 1105, 1108 (App.1995) (holding that the duty ran from the independent medical examiner to the insurance carrier who retained him, not to the individual); *Keene v. Wiggins*, 69 Cal.App.3d 308, 138 Cal.Rptr. 3, 7 (1977) (concluding that physician retained by employer to conduct an IME of an injured employee had a duty of care to prepare the report for the employer, not the employee); *Martinez v. Lewis*, 969 P.2d 213, 218–19 (Colo.1998) (holding that an independent examiner hired by insurer had no physician-patient relationship with and owed no duty to plaintiff-insured); *Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595, 597 (1975) (determining that physician retained by insurance carrier to conduct an IME had no physician-patient relationship with plaintiff who lost insurance benefits based on the results of the IME); *Violandi v. City of New York*, 184 A.D.2d 364, 365, 584 N.Y.S.2d 842 (N.Y.App.Div.1992) (noting that a physician-patient relationship does not exist when the examination is performed on behalf of the employer); *Tomko v. Marks*, 412 Pa.Super. 54, 602 A.2d 890, 892 (1992) (holding that plaintiff did not have a valid medical malpractice claim when the IME was conducted solely at the request of the plaintiff's employer); *Johnston v. Sibley*, 558 S.W.2d 135, 137–38 (Tex.App.1977) (determining that a physi-

2003 UT App 401, ¶ 9 n. 2, 81 P.3d 808. For example, a physician "owes the patient a duty of reasonable care (e.g., a duty of confidentiality and duty not to exploit the patient)" as soon as the "patient enters [the] doctor's office, fills out forms, and speaks to [the] doctor." *Id.* However, even though a physician-patient relationship can

exist before treatment begins, the example provided by *Newman, see id.*, still requires the individual to become a patient by actively seeking treatment from the doctor. *See* 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 130 (2002). This is not the situation here.

cian's duty to use a professional standard of care in the examination and in preparing the report runs only to the party requesting the report). Joseph argues that these IME cases are not applicable because the examination in this case was not done pursuant to formal litigation and is therefore not actually an IME. This is an illusory distinction. *See Violandi*, 184 A.D.2d at 365, 584 N.Y.S.2d 842 (holding that the plaintiff did not have an actionable negligence claim against the physician, despite the fact that the IME was performed on behalf of the employer and not in response to any pending legal action). The City retained McCann to perform an IME on Joseph; therefore, McCann's duty ran to the City, not to Joseph.

## CONCLUSION

¶ 16 Without the existence of a physician-patient relationship between McCann and Joseph, Joseph cannot maintain a medical malpractice claim against McCann. Because Joseph was not McCann's patient seeking psychiatric treatment and because the contract for medical services was between McCann and the City, not McCann and Joseph, we conclude that there was no physician-patient relationship between McCann and Joseph. Therefore, the trial court did not err when it held that McCann "owed no legal duty to [Joseph] from which a [medical malpractice] action could be commenced."

¶ 17 Accordingly, we affirm.

¶ 18 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JAMES Z. DAVIS, Judge.