Emerald Denise JOHNSON, as Administratrix of the Estate of Lenise Xavier Nelson, a Minor, Deceased, Plaintiff,

v.

UNIVERSITY OF CHICAGO HOSPITAL, et al., Defendants.

No. 90 C 3620.

United States District Court, N.D. Illinois, E.D.

Sept. 26, 1991.

Jeffrey M. Goldberg, Jeffrey M. Goldberg & Associates, Daniel Francis Maglione, David M. Wittenberg, Ltd., and David Wittenberg, Wittenberg & Dougherty, Chicago, Ill., for plaintiff Emerald Denise Johnson.

Anton Ronald Valukas, Scott Ian Hamilton and William A. Von Hoene, Jr., Jenner & Block, Chicago, Ill., for defendants University of Chicago Hospitals and Clinics, Wyler Childrens Hosp., James Walters, M.D., and Denise McCall, R.N.

John G. Langhenry, Jr., Maxwell Griffin, Jr., Hinshaw & Culbertson, Chicago, Ill., for defendant St. Bernard Hosp.

Anthony J. Alholm, Susan Ann Wagener, Alholm & Monahan, Chicago, Ill., for defendants Niluardo Cay, M.D. and Amarjit Singh, M.D.

Anthony J. Alholm, Daniel F. D'Attomo, Alholm & Monahan, Chicago, Ill., for defendants Rudolfo Uy, M.D. and The Medicus Group, Inc.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This court must decide whether Emerald Denise Johnson, as the administratrix of the estate of her daughter, Lenise Xavier Nelson (hereafter both the estate and Emerald D. Johnson will be referred to as "Johnson") has stated a claim for medical malpractice under Illinois common law and the Comprehensive Omnibus Budget Reconciliation Act (the "COBRA Act"), 42 U.S.C. § 1395dd, against the University of Chicago Hospital ("UCH"), Dr. James Walters ("Walters") and Nurse Denise McCall ("McCall") (hereafter these three defendants will be referred to collectively as the "UCH defendants"). We find that the UCH defendants owed no common-law duty to Johnson's daughter; therefore, we dismiss Counts I–III and V of the third amended complaint. We also find that Johnson failed to state a cause of action under the COBRA Act and therefore dismiss Count IV.

## BACKGROUND

The UCH is a resource hospital for the South Chicago Mobile Intensive Care System ("System") established pursuant to the Illinois Emergency Medical Services Act ("EMS Act"), Ill.Rev.Stat. ch. 111½, § 5501 *et seq.* The System coordinates emergency medical services for participating hospitals on the south side of Chicago. As a resource hospital, UCH receives calls from paramedics and directs paramedics to the closest available hospital.

On February 2, 1990, Lenise Nelson, a two-month-old infant, stopped breathing. Johnson telephoned the Chicago Fire Department on the 911 emergency medical services telephone number. Chicago Fire Department paramedics responded to the call. Upon arrival at Johnson's home, the paramedics began cardiopulmonary resuscitation and loaded Lenise into an ambulance. The paramedics then radioed the telemetry operator for the UCH. Defendant McCall, a registered nurse in emergency medicine, was the telemetry operator on duty at the time. McCall informed the paramedics that UCH was on partial bypass. McCall therefore instructed the paramedics to take Lenise to St. Bernard's Hospital ("St. Bernard's"), the nearest hospital which was not on by-pass. The paramedics followed that instruction and took Lenise to St. Bernard's. It is uncontroverted that the paramedics never physically presented Lenise to the UCH emergency room and that Lenise was never physically present at UCH.

Lenise was treated at St. Bernard's emergency room by co-defendants Dr. Niluendo Cay, Dr. Amarjt Singh, and Dr. Rudolfo Uy. Thereafter, Lenise was transferred from St. Bernard's to Cook County Hospital, where she died.

Johnson filed suit against UCH, Dr. James Walter, Nurse McCall, St. Bernard's, Dr. Cay, Dr. Singh, Dr. Uy, and the Medicus Group, Inc. Dr. Walters is the medical director for the System. In Counts I–III, Johnson brings wrongful death causes of action against UCH, Walters, and McCall. Count V alleges an action for common-law negligence under Ill.Rev.Stat. ch. 110½, ¶ 27–6 ("Survival Act"). In Count IV, Johnson brings an action pursuant to the COBRA Act against the same defendants. Johnson directs Counts VI–IX, which include other COBRA counts, to the remaining defendants.

Johnson's basic claim against the UCH defendants is that at the time of the paramedics' call, only UCH's pediatric intensive care unit, and not the UCH emergency room, was on by-pass. Therefore, Johnson alleges that UCH should have accepted Lenise as a patient. Furthermore, Johnson claims that St. Bernard's does not have a pediatric intensive care unit and thus was an inappropriate location to send a pediatric patient such as Lenise.

The UCH defendants move to dismiss Counts I–III and V on the basis that they owed no duty to Lenise under the common law and to dismiss Count IV on the basis that Johnson failed to state a claim under the COBRA Act.

## DISCUSSION

■ We should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). For Counts I–III and V, the issue we must decide is whether the UCH defendants owed any duty to Johnson. Unless the UCH defendants owed Johnson some duty, then Johnson cannot prove any set of facts which would entitle her to relief. Whether Johnson properly stated a cause of action under the COBRA Act is at issue in Count IV. We address these issues separately below.

## COUNTS I–III and V

Johnson admits that Counts I–III and V allege common-law actions for wrongful death and under the Survival Act. Johnson's Response Memorandum at page 4. However, to have a common-law cause of action for wrongful death or under the Survival Act, the defendants must owe some duty to the decedent.

■ A cause of action on behalf of a beneficiary to recover damages for the wrongful death of a decedent did not exist at common law. *Wilbon v. D.F. Bast Co.,* 73 Ill.2d 58, 61, 22 Ill.Dec. 394, 382 N.E.2d 784 (1978). Also at common law, a decedent's cause of action for negligence abated upon death. *Nat'l Bank of Bloomington v. Norfolk & W.R. Co.,* 73 Ill.2d 160, 172, 23 Ill.Dec. 48, 383 N.E.2d 919 (1978). Today, beneficiaries can bring a common-law action under the Wrongful Death Act for damages arising from the decedent's death, Ill.Rev.Stat. ch. 70 ¶ 1 *et al.,* and the personal representatives of the decedent can maintain those common-law actions for personal injuries which the decedent maintained at the time of death pursuant to the Survival Act. *Howe v. Clark Equipment Co.,* 104 Ill.App.3d 45, 59, 59 Ill.Dec. 835, 432 N.E.2d 621 (4th Dist.1982). As applied to our situation, these actions adopt as the elements of their prima facie case the elements of a typical negligence cause of action. *Flynn v. Vancil,* 41 Ill.2d 236, 240, 242 N.E.2d 237 (1968) (wrongful death action); *Old Second Nat'l Bank v. Aurora Township,* 156 Ill.App.3d 62, 65, 109 Ill. Dec. 31, 509 N.E.2d 692 (2nd Dist.1987) (to establish a cause of action under the Wrongful Death Act, a party must establish a duty of the defendant toward the decedent, a breach of that duty, and damages resulting from that breach); Ill.Rev. Stat. ch. 110½ ¶ 27–6 (under the Survival Act, the personal representative of decedent can bring a negligence action to recover damages for injury to the decedent).

In our case, no party has cited to any authority which recognizes a common-law duty on the part of a private hospital to provide treatment to a patient.[1] And the only authorities cited to the court, primarily the opinions of legal commentators, stand for the opposite conclusion: that the common law generally does not recognize a duty on the part of a private hospital to treat anyone. Dowell, *Indigent Access to Hospital Emergency Room Services,* Clearinghouse Review, October 1984 at 483; Note, *To Treat or Not to Treat: A Hospital's Duty to Provide Emergency Care,* 15 U.C. Davis L.Rev. 1047 (1982); Annotation, *Liability of Hospital for Refusal to Admit or Treat Patient,* 35 A.L.R.3d 841 (1971).[2] We therefore con-

---

1. In general, public hospitals are governed by a different rule and are obligated to provide treatment to all members of the public. Annotation, *Liability of Hospital for Refusal to Admit or Treat Patient,* 35 A.L.R.3d 841 (1971); Note, *To Treat or Not to Treat: A Hospital's Duty to Provide Emergency Care,* 15 U.C. Davis L.Rev. 1047 (1982). Johnson does not challenge UCH's assertion that it is a private hospital.

2. Other authorities recognize this common-law rule. Powers, *Hospital Emergency Service and*

the Open Door, 66 Mich.L.Rev. 1455 (1968); Note, *Must a Private Hospital be a Good Samaritan,* 18 U.Fla.L.Rev. 475 (1965). We note that other jurisdictions have recognized an exception to this common-law rule and have found a duty on the part of a private hospital to treat certain emergency patients. *O'Neill v. Montefiore Hospital,* 11 A.D.2d 132, 202 N.Y.S.2d 436, 438–440 (1960) (nurse's telephone call to a physician was considered evidence that the emergency room had initiated treatment so that the hospital had a duty to continue to treat the patient); *Wil-*

clude that absent some statutory mandate, the defendants did not have a duty to treat Johnson's daughter.

■ In her response, Johnson argues UCH had a statutory duty to treat her child pursuant to the Illinois Emergency Medical Treatment Act ("Treatment Act"), Ill.Rev. Stat. ch. 111½, ¶ 86. The Treatment Act provides as follows:

> Every hospital ... shall provide a hospital emergency service ... and shall furnish such hospital emergency services to any applicant who applies for the same in case of injury or acute medical condition where the same is liable to cause death or severe injury or serious illness.

Ill.Rev.Stat. ch. 111½, ¶ 86. However, the Treatment Act does not solve Johnson's dilemma because the Act provides a remedy for its violations: a fine not exceeding $10,000. Ill.Rev.Stat. ch. 111½, ¶ 87.

Under Illinois law, when the legislature creates statutory duties in derogation of the common law, and also creates statutory remedies for violations of the statute, the remedy so prescribed is exclusive. *Kosicki v. S.A. Healy Co.*, 380 Ill. 298, 44 N.E.2d 27, 29 (1942), *People ex rel. Cantazaro v. Centrone*, 48 Ill.App.2d 484, 199 N.E.2d 226, 227 (1st Dist.1964). Since the Treatment Act creates a statutory duty in derogation of the common law, its remedy is exclusive.

Finally, we decline to impose a new common-law duty on the already overburdened hospitals that participate in Chicago's trauma network. Our declination comports with the Seventh Circuit's instruction to defer creating new Illinois torts to the Illinois courts or Illinois legislature. *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) (creating new Illinois torts is something for the Illinois courts or Illinois legislature to do rather than the federal courts).

*mington General Hospital v. Manlove*, 174 A.2d 135, 139–40 (Del.1961) (maintenance of an emergency ward established a custom relied on by the public which created a duty on the part of the defendant to render emergency care);

## COUNT IV

■ In Count IV, Johnson claims the UCH defendants violated the COBRA Act by refusing to treat Lenise, by ordering Lenise to be transferred away from the UCH while she was in an unstable condition, and by transferring her when such a transfer was not in her best interests. Complaint at ¶ 71a–c. The UCH defendants argue Johnson failed to state a claim for which relief can be granted because an essential element of a COBRA Act claim is that the patient must first come to the emergency room. We agree.

The COBRA Act states in pertinent part as follows:

> In the case of a hospital that has a hospital emergency department, if any individual ... *comes to the emergency department* and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination ... (42 U.S.C. § 1395dd(a), emphasis added.)

> If any individual ... *comes to a hospital* and the hospital determines that the individual has an emergency condition, the hospital must provide either—(a) ... for such further medical examination and such treatment as may be required to stabilize the medical condition, or (b) for transfer of the individual to another medical facility in accordance [with another provision of the act]....

42 U.S.C. § 1395dd(b), emphasis added. To state a cause under the COBRA Act, the plaintiff must allege that the patient went to the defendant's emergency room. *Deberry v. Sherman Hospital Association*, 741 F.Supp. 1302, 1305 (N.D.Ill.1990). Since Johnson does not allege that her daughter went to the UCH emergency room, we dismiss Count V.

## CONCLUSION

For the reasons set forth above, we grant the University of Chicago defen-

*Stanturf v. Sipes*, 447 S.W.2d 558, 562 (Mo. 1969). However, these cases are distinguishable because the plaintiff, or a representative of the plaintiff, physically presented himself to the hospital's emergency room.

dants' motion, and dismiss Counts I–V with prejudice.