982 F.2d 230
 61 USLW 2400, Medicare & Medicaid Guide P 40,966,
Medicare & Medicaid Guide P 41,370
 Emerald Denise JOHNSON, as Administrator of the Estate of
Lenise Xavier Johnson, a minor, deceased,
Plaintiff-Appellant,
v.
UNIVERSITY OF CHICAGO HOSPITALS, James Walters, M.D., and
Denise McCall, R.N., Defendants-Appellees.
 No. 91-3587.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 11, 1992.
Decided Dec. 28, 1992.
As Amended on Denial of Rehearing
March 5, 1993.
 
 Jeffrey M. Goldberg (argued), Lawrence R. Kream, Goldberg & Associates; Daniel F. Maglione, David Wittenberg, Wittenberg & Dougherty; and James M. Geraghty, Ball & Geraghty, Chicago, IL, for plaintiff-appellant.
 William A. Von Hoene, Jr. (argued), Anton Valukas, Scott I. Hamilton, Jenner & Block, Chicago, IL, and Mark D. Deaton, Illinois Hosp. Ass'n, Naperville, IL, for defendants-appellees.
 Mark D. Deaton, Illinois Hosp. Ass'n, Naperville, IL, Robert H. Abney, Metropolitan Chicago Healthcare Council; Steven H. Jesser, Northwestern Memorial Hosp., Rachel Dvorken, Illinois Masonic Medical Center, Office of Legal Counsel; Maureen D. Mudron, James A. Henderson, Chicago, IL, Virginia M. Kennedy, Illinois College of Emergency Physicians, Oak Brook Terrace, IL, Elise S. Aron, Illinois Dept. of Public Health; and Kelly R. Welsh, Asst. Corp. Counsel, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for amici curiae.
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 PER CURIAM.
 
 
 1
 During February 1990, the University of Chicago Hospitals (UCH) served as the resource facility for the South Chicago Mobile Intensive Care System. This system was established pursuant to the Emergency Medical Services Act, Ill.Rev.Stat. ch. 111 1/2, pp 5501 et seq. (1992) (hereinafter the EMS Act). UCH's responsibilities included providing telemetry communications to ambulance paramedics in the system, and this in turn required UCH to direct paramedics transporting emergency patients to the appropriate hospital in the system.
 
 
 2
 On February 2, 1990, Lenise Johnson, a one-month-old infant, stopped breathing. Her mother, Emerald Johnson, contacted "911" emergency medical services. Chicago Fire Department paramedics soon arrived at her home and began treating Lenise. Because Lenise remained in full cardiac arrest, the paramedics contacted the telemetry system operator situated at UCH, Nurse Denise McCall.[1] Although the paramedics informed McCall that they were only five blocks from UCH, because UCH had declared a "partial bypass" at that time, McCall instructed the paramedics to transport Lenise to St. Bernard's Hospital. She was treated in St. Bernard's emergency room and subsequently transferred to Cook County Hospital because St. Bernard's did not have a pediatric intensive care unit. Lenise died sometime after her transfer to Cook County Hospital.
 
 
 3
 Emerald Johnson filed suit in state court against UCH, McCall and Walters, alleging, in four counts, common law actions for wrongful death and negligence under the Illinois Survival Act, Ill.Rev.Stat. ch. 110 1/2, p 27-6 (1992).[2] Johnson also alleged that the same defendants violated the Comprehensive Omnibus Budget Reconciliation Act. 42 U.S.C. §§ 1395dd et seq. (1992) (hereinafter COBRA).[3] The defendants removed the suit to the United States District Court for the Northern District of Illinois, jurisdiction being predicated upon that court's federal question and pendent jurisdiction.[4] See 28 U.S.C. §§ 1331, 1441 (1992).
 
 
 4
 The district court granted defendants' motion to dismiss.[5] Johnson v. University of Chicago Hosp., 774 F.Supp. 510 (N.D.Ill.1991). The court held that Johnson's common law claims failed because the defendants owed no duty under the common law to treat Lenise. The court dismissed the COBRA claim because it failed to allege that Lenise came to UCH's emergency room. Johnson brought this appeal.[6] A majority of the panel originally issued an opinion in this case on October 7, 1992, over Judge Cudahy's dissent, affirming the dismissal of the common law counts but reversing as to the COBRA claim. We subsequently vacated that opinion by an order dated November 23, 1992. We review the district court's decision de novo and now affirm in part, reverse in part and remand for further proceedings.
 
 I.
 
 5
 Ms. Johnson does not contest the district court's finding that UCH, as a private hospital, had no common law duty to treat her child. Rather, she submits that UCH owed a duty to her child because it voluntarily assumed the responsibilities of a resource hospital which included telemetry operations. We agree. Under Illinois law, liability can arise from the negligent performance of a voluntary undertaking. Martin v. McDonald's Corp., 213 Ill.App.3d 487, 612, 157 Ill.Dec. 609, 572 N.E.2d 1073, 1076 (Ill.App. 1st Dist.1991). See also Restatement (Second) of Torts, § 324A. Johnson's claim falls squarely under this rule. The defendants volunteered to provide directions to Lenise's ambulance, and thus became subject to the usual obligations in tort.
 
 
 6
 Subjecting a telemetry system to liability of this sort does not constitute creation of a "new tort;" rather, it is merely an application of the ancient action of trespass on the case to the activities of a telemetry operator. As a result, it is not relevant, at least to the question of liability in the first instance, that the telemetry system was operated pursuant to the EMS Act that provides remedies for violations of its provisions. Under Illinois law, statutory remedies are exclusive only to the extent they are linked to duties unknown at common law. Kosicki v. S.A. Healy Co., 380 Ill. 298, 44 N.E.2d 27, 29 (1942). As previously noted, the defendants' potential liability derives from common law principles.
 
 
 7
 The EMS Act does include an immunity provision that is applicable here. Ill.Rev.Stat. ch. 111 1/2, p 5517 (1992). Because the EMS Act does not create any obligation for hospitals to provide care to persons in need, the immunity provision can only apply to duties that exist at common law. This suggests that the negligent giving of instructions by a telemetry operator is actionable in the first instance. The immunity provision, however, insulates a telemetry system operator from liability for any activity that does not rise to the level of "willful or wanton misconduct." Ill.Rev.Stat. ch. 111 1/2, p 5517(a) (1992). Some of Johnson's common law counts apparently fail to allege willful or wanton behavior by the defendants. One of them at least, however, does allege that the defendants acted with "a conscious disregard and utter indifference for the safety of plaintiff's decedent." Complaint p 70. On remand, therefore, the district court will have to address the sufficiency of the complaint in the light of the statutory immunity provision.
 
 
 8
 In any event, we reverse the judgment of the district court with respect to the existence of common law obligations, and remand for further proceedings with the understanding that the statutory immunity may well apply to some of the counts.
 
 II.
 
 9
 Count IV of Johnson's complaint alleges a cause of action under COBRA. COBRA requires hospitals receiving federal funds, such as UCH, to provide an "appropriate medical screening examination within the capability of the hospital's emergency department [for] any individual ... [who] comes to the emergency department." 42 U.S.C. § 1395dd(a) (1992). It also requires that such hospitals provide emergency stabilizing treatment or an appropriate transfer to another medical facility for "any individual ... [who] comes to a hospital." 42 U.S.C. § 1395dd(b) (1992). In accordance with the plain meaning of the statutory language, we do not believe that Lenise ever "came to" the UCH or its emergency department. For purposes of COBRA, a hospital-operated telemetry system is distinct from that same hospital's emergency room. Nothing in the language of the statute or in the legislative history that has been cited to us suggests an extension of 42 U.S.C. § 1395dd to create a duty in a telemetry operator that would be actionable under the present facts.[7] Accordingly, COBRA liability is not invoked, and we affirm the dismissal of Count IV of Johnson's Third Amended Complaint.
 
 III.
 
 10
 For the foregoing reasons, the district court's dismissal of Count IV is AFFIRMED. The district court's dismissal of Counts I, II, III and V is REVERSED and the cause REMANDED for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Nurse McCall was at all relevant times acting under the authority of Dr. James Walter, the medical director of the mobile intensive care system
 
 
 [2]
 Johnson alleged that at the time the paramedics contacted McCall, the bypass at UCH applied only to its pediatric intensive care unit and not its emergency room. She maintained, therefore, that UCH should have admitted Lenise as a patient in its emergency room. She further alleged that St. Bernard's was an inappropriate location to send Lenise because it did not have a pediatric intensive care unit
 
 
 [3]
 Johnson's complaint equated the defendants' actions with a refusal to treat her child
 
 
 [4]
 After the case was removed, the district court noted that the common law causes of action adopted the elements of a typical negligence cause of action. Johnson v. University of Chicago Hosp., 774 F.Supp. 510, 512 (N.D.Ill.1991)
 
 
 [5]
 In ruling on a motion to dismiss, the court must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. Gorski v. Troy, 929 F.2d 1183, 1186 (7th Cir.1991). The court is similarly constrained from considering any facts extraneous to the pleadings
 
 
 [6]
 Johnson also brought several counts directed at St. Bernard's, three of its emergency room doctors and the Medicus Group, Inc. These are not at issue in this appeal
 
 
 [7]
 Section 1395dd was enacted as a response to the nationwide problem of hospitals "dumping" indigent patients who have no health insurance. See, e.g., Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1039 (D.C.Cir.1991). It imposes on hospitals receiving federal funds a duty to accept any patient seeking treatment in their emergency rooms. Id. at 1039-40. Although a hospital could conceivably use a telemetry system in a scheme to dump patients, a persuasive argument to this effect is not before us in this case. If and when this issue is properly before us, the language and intent of the statute will have to be examined again. Moreover, here the ambulance contacted the telemetry system (then operated by UCH) as such rather than the emergency department of UCH. There is nothing to suggest that Congress intended to provide for liability in these circumstances. Lenise simply never "came to" UCH for medical assistance, and thus never crossed the threshold of COBRA liability