IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| B. Investment LC, a Utah limited liability company; and Michelle Whitt Ortega, Trustee of the Michelle Whitt Ortega Family Trust, | ) ) ) ) ) | OPINION<br><br>Case No. 20100071-CA |
| Plaintiffs, Appellants, and Cross-appellees, | ) ) ) | F I L E D<br>(January 26, 2012) |
| v. | ) ) | 2012 UT App 24 |
| Cathy O. Anderson, Trustee of the Cathy O. Anderson Living Trust; Longfellow Holdings, LLC, a Utah limited liability company; Joan M. Dallof, Trustee of the Joan M. Dallof Revocable Trust; Henry S. Hemmingway, Trustee of the Henry S. Hemmingway Revocable Trust; and Spinnaker Point Condominium Owners Association, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, Appellees, and Cross-appellants. | ) ) | |

-----

First District, Randolph Department, 060100011
The Honorable Clint S. Judkins

Attorneys:  Ronald G. Russell, Salt Lake City, for Appellants
Vincent C. Rampton, Salt Lake City, for Appellees

-----

Before Judges Voros, Thorne, and Roth.

VOROS, Associate Presiding Judge:

¶1      This quiet title action involves a stretch of beach at Bear Lake.  The beachfront property is part of a hybrid condominium project known as Spinnaker Point.  The project includes both traditional condominium units and lots intended for single family dwellings.  Owners of the traditional condominium units (the Condo Owners) brought suit against the condominium declarant, the Spinnaker Point Condominium Owners Association, and the owners of the single family lots (collectively, the Lot Owners).

¶2      This appeal requires us to interpret the provisions of Spinnaker Point's Amended Plat and Amended Declaration in light of the Utah Condominium Ownership Act (the Act), *see* Utah Code Ann. §§ 57-8-1 to -54 (2010 & Supp. 2011).[1]  Each set of owners contends that the documents support its position.  Because the documents are internally inconsistent, neither side's reading is wholly satisfactory.  The trial court entered summary judgment in favor of the Lot Owners, ruling that the Lot Owners as well as the Condo Owners own a share of the beachfront property.  For reasons stated below, we agree with the trial court and therefore affirm.


BACKGROUND

¶3      Spinnaker Point was created in 1984; the original record of survey map showed six condominium units in a first phase, with a possible expansion area.  After three condominium units were constructed on what is now Lot 2, Spinnaker Point was conveyed to Donald and Cathy Anderson.  In 2001, the Andersons filed an Amended Plat and an Amended Declaration, dividing the property into five lots and designating Lots 1, 3, 4, and 5 for single family dwellings.  The Amended Plat also designated, and marked with a cross-hatch pattern, a Limited Common Area consisting of a corridor between Lots 2 and 3 and a beachfront area abutting Lots 2 and 3.

---

1. The relevant code provisions in effect when the Amended Declaration and Amended Plat were filed have not been substantively changed.  We therefore cite to the current version of the code for the reader's convenience.

¶4     The Limited Common Area is the subject of this dispute.  The Condo Owners contend that they own the Limited Common Area, subject only to the Lot Owners' right of access to and from the beach.  The Lot Owners contend that they and the Condo Owners own the Limited Common Area in equal shares.  The trial court entered summary judgment in favor of the Lot Owners.

ISSUES AND STANDARDS OF REVIEW

¶5     On appeal, the Condo Owners contend that "the Amended Declaration and Amended Plat require" that they are the sole owners of the Limited Common Area.  The Condo Owners also contend that the Condominium Ownership Act "precludes the Lot Owners from owning a portion of the [Limited] Common Area and requires that the Condo Owners own the [Limited] Common Area."  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Utah R. Civ. P. 56(c).  We "review[] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."  *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 10, 235 P.3d 730 (citation and internal quotation marks omitted).

¶6     On cross-appeal, the Lot Owners contend that the trial court erred in refusing to award attorney fees to which they were entitled under the Amended Declaration.  Generally, "[w]hether attorney fees should be awarded is a legal issue that we review for correctness."  *Gardiner v. York*, 2006 UT App 496, ¶ 5, 153 P.3d 791 (citing *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998)).

ANALYSIS

I. Ownership of the Limited Common Area

¶7     This dispute arises from a conflict between the language in the Amended Declaration and the language in the Amended Plat.  The Lot Owners rely principally on Exhibit C of the Amended Declaration.  It features a columnar chart defining the "Percentage of Ownership of *Limited Common Ownership Areas* as indicated on the Plat

20100071-CA                                    3

Map." According to this chart, the Lot Owners and the Condo Owners each own an undivided 14.286% interest in the Limited Common Area.

¶8 The Condo Owners rely principally on a note appearing on the Amended Plat. This note states, "Limited common ownership on this plat denotes access to and use of common area at beach. Ownership of this limited common area remains with Lot 2." Lot 2 belongs to the Condo Owners. They thus claim full ownership of the Limited Common Area and argue that the Lot Owners hold only a right of access over it.

¶9 "We interpret the provisions of the Declaration as we would a contract." *View Condo. Owners Ass'n v. MSICO, LLC*, 2005 UT 91, ¶ 21, 127 P.3d 697. "If the Declaration is not ambiguous, we interpret it according to its plain language." *Id.* "We may resort to extrinsic evidence as an aid to construction only where there is an ambiguity."[2] *Id.* In addition, the declaration and the plat must be construed together. *See id.* ¶ 24.

¶10 We also read the Amended Declaration and Amended Plat in light of the Act. *See Country Oaks Condo. Mgmt. Comm. v. Jones*, 851 P.2d 640, 641–42 (Utah 1993). Condominium declarations and the condominium plats are governed by separate sections of the Act. Condominium declarations are governed by section 57-8-10. That section requires the declaration to "include the percentage or fraction of undivided interest in the common areas." *See* Utah Code Ann. § 57-8-10(2)(d)(i) (Supp. 2011). This must be done "in accordance with Section 57-8-7(2)." *Id.* Significantly, section 57-8-7(2) provides that "[e]ach unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentages or fractions expressed *in the declaration.*" *Id.* § 57-8-7(2) (2010) (emphasis added). This interest may be "reflected by . . . an exhibit or schedule accompanying the declaration and recorded simultaneously with it, containing columns." *Id.*

¶11 Plats are governed by section 57-8-13. Unsurprisingly, this section focuses on boundaries, encroachments, locations, dimensions, floorplans, and the like. *See id.* § 57-8-13 (2010). It does not mention the proportional ownership of common areas.

¶12 As required by section 57-8-7(2), Exhibit C to the Amended Declaration "allocate[s] to each unit an equal undivided interest in the common areas," *see id.* § 57-8-

---

2. Here, the parties agree that no parol evidence sheds light on the relevant documents, which must as a result be read as they are written.

7(2).  In addition, Exhibit C features a columnar chart defining the percentage of ownership of the Limited Common Area:

Percentage of Ownership of
*Limited Common Ownership Areas*
as indicated on the Plat Map
by the cross hatched pattern

Lot No.

| | |
|---|---|
| 1 | 14.286% |
| 2 Unit 1 | 14.286% |
| 2 Unit 2 | 14.286% |
| 2 Unit 3 | 14.286% |
| 3 | 14.286% |
| 4 | 14.286% |
| 5 | 14.286% |

This chart complies with the requirements of section 57-8-10.  *See* Utah Code Ann. § 57-8-10(2)(d)(i).  Exhibit C's chart specifies that the Lot Owners and the Condo Owners each own an undivided 14.286% interest in the Limited Common Area.

¶13    Other provisions of the Amended Declaration reinforce the conclusion that the Lot Owners and the Condo Owners own equal undivided interests in the Limited Common Area.  According to the Amended Declaration, the Common Areas—which by definition include the Limited Common Area—are "owned by the Unit Owners as tenants in common."  The Amended Declaration defines "Unit Owners" to include both Condo Owners and Lot Owners.  Accordingly, both Condo Owners and Lot Owners own the Limited Common Area as tenants in common.  Because "tenants in common are presumed to hold equal, undivided shares in the commonly owned property," *see Shiba v. Shiba*, 2008 UT 33, ¶ 15, 186 P.3d 329, the language in the Amended Declaration supports Exhibit C's statement that the Lot and Condo Owners own the same proportional share of the Limited Common Area.

¶14    The Amended Plat, recorded concurrently with the Amended Declaration but dated seven weeks before the Amended Declaration was signed, suggests a different result.  The Amended Plat contains a note with five statements.  The fourth of these

describes ownership of the Limited Common Area as belonging to the Condo Owners, whose units are on Lot 2:

> LIMITED COMMON OWNERSHIP ON THIS PLAT
> DENOTES ACCESS TO AND USE OF COMMON AREA AT
> BEACH.  OWNERSHIP OF THIS LIMITED COMMON
> AREA REMAINS WITH LOT 2.

¶15    The core question in this case is whether the parties' relative interests in the Limited Common Area should be governed by Exhibit C to the Amended Declaration or by the note on the Amended Plat.  We conclude that the Act has resolved the conflict by designating the declaration as the document that defines unit owners' relative interests in the common area:  "Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentages or fractions expressed *in the declaration*."  Utah Code Ann. § 57-8-7(2) (emphasis added).  We therefore conclude that the Condo Owners and the Lot Owners own equal undivided interests in the Limited Common Area.

¶16    The Condo Owners resist this conclusion on multiple grounds.  Most significantly, they contend that the Utah Supreme Court has held, and the Act itself provides, that the term "unit" is limited to an area "within a physically enclosed space."  Thus, they reason, the owner of a single family dwelling lot or a lot without a building on it cannot be a "unit owner" as that term is used in the Amended Declaration and the Act.

¶17    This argument finds support in *Country Oaks Condominium Management Committee v. Jones*, 851 P.2d 640 (Utah 1993).  The question before the supreme court in *Country Oaks* was whether owners of undeveloped parcels within a condominium project owned "units."  *See id*. at 640.  Following the parties' lead, the court first examined the condominium declaration and supplemental declaration.  *See id.* at 641.  Taken as a whole, the declarations indicated that "a unit exists only when a structure provides an enclosed area for the exclusive use and possession of the owner."  *Id*. at 641–42.  For example, both declarations described a unit as "[t]he space enclosed within the undecorated interior surface of its perimeter walls, floors and ceilings . . . projected, where appropriate, to form a complete enclosure of space."  *Id*. at 641 (alteration in original).  The court applied the declarations' definition of "unit" as an enclosed space. *See id.* at 641–42.

¶18     The court "acknowledge[d] that the Act anticipates that a condominium project may contain proposed units that are not yet constructed." *Id*. at 642. Nevertheless, it concluded that the declarations' definition of unit as an enclosed space was buttressed by another provision of the Act, section 57-8-3(8). *See id*. That section provides, "'Any reference in this chapter to a condominium unit includes both a *physical unit* together with its appurtenant undivided interest in the common areas and facilities . . . .'" *Id*. (quoting Utah Code Ann. § 57-8-3(8) (Michie 1990) (current version at *id*. § 57-8-3(10) (LexisNexis Supp. 2011))).

¶19     We read *Country Oaks* as allowing declarants a measure of latitude in defining a unit. The court concluded that the Country Oaks declarations' definition of unit as an "enclosed space" found sufficient support in a provision of the Act providing that a unit be "physical." *See id.* This statutory definition gives limited support to the proposition that a unit must be an enclosed space, although the opinion does not explain why a vacant lot does not also qualify as "physical." Nevertheless, even where "the Act anticipates that a condominium project may contain proposed units that are not yet constructed," *id.*, this reference to a "physical unit" offered sufficient statutory support for the court to apply the Country Oaks declarations' definition of "unit."

¶20     The Spinnaker Point Amended Declaration defines "Unit" to mean "one of the Condominium Units, and/or Lots 1, 3, 4 and 5 . . . ." Similarly, a "Unit Owner" includes an "entity, person or persons owning one or more of Lots 1, 3, 4 and 5 for single family dwellings . . . ." Thus, under the Amended Declaration, Lots 1, 3, 4, and 5 are "units." This definition of "unit" finds at least as much support in the Act as the definition upheld in *Country Oaks*.

¶21     Subsection 57-8-3(10) of the Act states, "Any reference in this chapter to a condominium unit includes both a physical unit together with its appurtenant undivided interest in the common areas and facilities . . . ." Utah Code Ann. § 57-8-3(10) (Supp. 2011). Subsection 57-8-3(27) of the Act defines "unit" to include "a separate physical part of the property intended for any type of independent use, including one or more rooms or spaces located in one or more floors or part or parts of floors in a building . . . ." *Id.* § 57-8-3(27). Finally, subsection 57-8-3(23) of the Act defines "property" as "the land, whether leasehold or in fee simple, the building, *if any*, all improvements and structures thereon, all easements, rights, and appurtenances belonging thereto, and all articles of personal property intended for use in connection therewith." *Id.* § 57-8-3(23) (emphasis added). In addition, section 57-8-13 refers to "*any*

*unit* or convertible space *not contained or to be contained in a building* or whose boundaries are not to be coextensive with walls, ceilings, or floors within a building . . . ." *Id.* § 57-8-13(1)(a)(iv) (2010) (emphases added).

¶22    These definitions cannot reasonably be read to categorically exclude a vacant lot or a single family dwelling from the definition of "unit." Each lot designated by the Spinnaker Point Amended Declaration is "a separate physical part of the property intended for any type of independent use," *see id.* § 57-8-3(27) (Supp. 2011), especially where the statutory definition of "property" includes land without a building on it, *see id.* § 57-8-3(23). Each such lot, moreover, is a "unit . . . not contained . . . in a building." *See id.* § 57-8-13(1)(a)(iv) (2010). Thus, the Amended Declaration's definition of "unit" is sufficiently consistent with the Act's definitions to meet the standard set in *Country Oaks.*

¶23    The Condo Owners' other principal contention is that, properly read, the Amended Plat and Exhibit C to the Amended Declaration present no irreconcilable conflict. To harmonize the provisions, the Condo Owners read Exhibit C's designation of "Percentage of Ownership of Limited Common Ownership Areas" to refer to percentage of ownership "in the limited property right" of "access to and from the lake and beach" across the Limited Common Area.

¶24    We agree with the Condo Owners that the provisions of the Amended Declaration "should be read as a whole, in an attempt to harmonize and give effect to all of the . . . provisions," *see Lee v. Barnes*, 1999 UT App 126, ¶ 11, 977 P.2d 550 (citation and internal quotation marks omitted) (referring to contract interpretation). Consequently, "[p]rovisions which are apparently conflicting are to be reconciled and harmonized, if possible, by reasonable interpretation so that the entire agreement can be given effect." *Big Cottonwood Tanner Ditch Co. v. Salt Lake City*, 740 P.2d 1357, 1359 n.1 (Utah Ct. App. 1987) (citation and internal quotation mark omitted). However, we do not agree that the Condo Owners' interpretation of Exhibit C is reasonable.

¶25    First, while the Condo Owners' reading of Exhibit C is consistent with the note to the Amended Plat, and perhaps with other provisions of the Amended Declaration, it is not consistent with the plain language of Exhibit C. Exhibit C is entitled "Ownership of Common Areas." The exhibit is divided into sections referring to percentage ownership of "Common Areas for Lot #2," "Common Ownership Areas for all Lots," and "Limited Common Ownership Areas." It does not mention easements or access rights. Similarly,

while other provisions of the Amended Declaration deal explicitly with access and use, the Amended Declaration describes Exhibit C as setting forth "the fractional *ownership* interests in the Common Areas." (Emphasis added.) Also, the exhibit was obviously designed to mirror the table described in Utah Code section 57-8-7(2). *See* Utah Code Ann. § 57-8-7(2) (2010). That subsection refers to unit owners' "undivided interest in the common areas and facilities," *id.*; it does not mention rights of access.

¶26 Second, the Condo Owners' reading of Exhibit C does not explain why the declarants would divide a right of access into seven equal 14.286% portions. More fundamentally, it does not explain why the Condo Owners, as the fee simple owners of the Limited Common Area, would each be granted a 14.286% right of access over it. Accordingly, we do not agree that Exhibit C and the note to the Amended Plat may be read in harmony without doing violence to the plain language of Exhibit C.

¶27 Next, the Condo Owners contend that Lots 1, 3, 4, and 5 are not part of the condominium project at all and, thus, the Lot Owners hold no interest in the project's common areas. In support, they cite to several provisions, including a notation in the Amended Plat stating, "Lot 2 has recorded covenants pertaining to the condominium association on Lot 2 only," and a provision in the Amended Declaration stating, "Declarant desires . . . to submit . . . Lot #2, and other improvements constructed thereon to the provisions of the [Act] as a Condominium Project as set forth in the original declaration, and convert Lots 1, 3, 4 and 5 as single family dwellings."

¶28 Against these provisions, however, are many provisions unequivocally stating that Lots 1, 3, 4, and 5 are part of the condominium project and subject to the Act. For example, the Amended Declaration defines "the Property" to include Lot 2 and the Lot Owners' parcels. It then goes on to "submit[] the Property to the provisions of the Act as a Condominium Project." It also defines "Condominium Project" as referring to "the entire property." In addition, the Amended Declaration makes no material distinction between the Condo Owners' parcel and the Lot Owners' parcels. For instance, as noted above, the Amended Declaration defines the word "Unit" to include "one of the Condominium Units, and/or Lots 1, 3, 4 and 5." Accordingly, we conclude that the Lot Owners' parcels are part of the condominium project.

¶29 Finally, the Condo Owners briefly argue that granting the Lot Owners ownership interests in the Limited Common Area would cause the building on Lot 2 to violate a city setback ordinance. They conclude that "[i]t would not have made any sense for the

drafters of the Amended Plat and Amended Declaration to intentionally violate setback requirements and, in any event, had they done so, [the city] could not have approved the Amended Plat." We understand this argument to be that the declarants and the city council must have understood the Amended Declaration as the Condo Owners do, because neither would have intended a zoning violation. Assuming without deciding that effectuating the clear intent of Exhibit C to the Amended Declaration would result in the violation of a zoning ordinance, we are not persuaded that this result was not simply inadvertent. In any event, this argument by inference is insufficient to refute the explicit language of Exhibit C.

¶30    For the foregoing reasons, we affirm the trial court's ruling that the Lot Owners and the Condo Owners own equal undivided interests in the Limited Common Area.

## II. Attorney Fees

¶31    On cross-appeal, the Lot Owners contend that they are entitled to an award of attorney fees. They rely on a provision of the Amended Declaration that allows recovery of costs and fees in an action against a unit owner for failure to comply with the Amended Declaration:

> Each Unit Owner . . . shall comply with the provisions of . . .
> this Declaration, . . . and any failure to comply with any of
> the provisions thereof shall be grounds for an action . . . for
> injunctive relief or to recover any loss or[] damage resulting
> therefrom, including costs and reasonable attorney's fees.

This action arose when the Condo Owners sued seeking a declaration that they were the sole owners of the Limited Common Area, subject to a right of access in the Lot Owners. The Lot Owners prevailed. However, the trial court ruled that the Condo Owners "did not violate any provision of the Amended Declaration by filing a lawsuit." It also ruled that "there is no reasonable evidence that would justify an award of attorney's fees under the Amended Declaration." It accordingly denied the Lot Owners' request for attorney fees.

¶32    Subject to exceptions inapplicable here, "'attorney fees are not recoverable by a prevailing party unless authorized by statute or contract.'" *Gallegos v. Lloyd,* 2008 UT App 40, ¶ 8, 178 P.3d 922 (quoting *Faust v. KAI Techs.,* 2000 UT 82, ¶ 17, 15 P.3d 1266).

"If [recoverable] by contract, the award of attorney's fees is allowed only in accordance with the terms of the contract." *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 671 (Utah 1982). The narrow question here is whether, by filing an unsuccessful declaratory judgment action, the Condo Owners failed to comply with any provision of the Amended Declaration.

¶33     This issue is controlled by *Faulkner v. Farnsworth*, 714 P.2d 1149 (Utah 1986) (per curiam). There, our supreme court set aside an award of attorney fees to a prevailing party. *See id*. at 1151. The court held that where the attorney fee provision requires the "defaulting party" to pay costs and expenses, the prevailing party must prove default:

> The contractual language does not award attorney fees to the prevailing party who succeeds in enforcing the agreement, but against the defaulting party whose default necessitates enforcement. As neither party was held in default, neither was entitled to attorney fees.

*Id*. The court observed that "[o]ther jurisdictions have held the award of attorney fees improper in disputes dealing with the declaration of rights and obligations under contract, where the contractual language restricted the award to curing default or breach or to enforcing the payment of rent or other provisions of a lease." *Id*. (collecting cases).

¶34     Here, the Lot Owners prevailed in the trial court, but they did not demonstrate that the Condo Owners violated any provision of the Amended Declaration. Accordingly, they have not come within the language of the attorney fee provision. The Lot Owners maintain that they have "expended significant costs and fees vindicating Spinnaker Point Condominium Association's right to regulate changes and improvements to the Limited Common Area, in the face of direct challenges to that right . . . ." Even if we agreed with that assertion, we cannot under *Faulkner* agree that the attorney fee provision in the Amended Declaration "should be construed broadly enough to reimburse [the Lot Owners] for the costs imposed on them by those challenges." Like the trial court here, and the supreme court in *Faulkner*, we construe the attorney fee provision according to its terms, which do not support an award of fees on the facts of this case.

CONCLUSION

¶35    This case presents a conflict between the Amended Declaration, which grants each Lot Owner an equal undivided ownership interest in the Limited Common Area, and the Amended Plat, which states that ownership of the Limited Common Area is held by the Condo Owners. The Utah Condominium Ownership Act specifies that a unit owner is entitled to an undivided interest in common areas as provided in the declaration. Thus, like the trial court, we conclude that the Amended Declaration governs. Accordingly, every Unit Owner—including each Lot Owner and each Condo Owner—owns an equal undivided interest in the Limited Common Area. The Condo Owners' objections to this reading, though plausible, are ultimately not persuasive.

¶36    On cross-appeal, we are not persuaded that the Condo Owners violated any provision of the Amended Declaration by bringing this declaratory action to clarify the parties' rights. Accordingly, we affirm the trial court's refusal to award the Lot Owners attorney fees and we likewise award no attorney fees on appeal.

¶37    Affirmed.


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


-----

¶38    WE CONCUR:


_____
William A. Thorne Jr., Judge


_____
Stephen L. Roth, Judge


20100071-CA                    12