2013 UT App 150

# THE UTAH COURT OF APPEALS

MAGNA G. HAHNEL, CHERYL PIETZ, AND
CAROL J. STEWART,
Plaintiffs and Appellants,

*v.*

DUCHESNE LAND, LC AND
HIGHLAND DEVELOPMENT, INC.,
Defendants and Appellees.

Opinion
No. 20111098-CA
Filed June 20, 2013

Third District, Salt Lake Department
The Honorable Kate A. Toomey
No. 090921035

Russell C. Fericks, Zachary E. Peterson, and
Rafael A. Seminario, Attorneys for Appellants
David J. Crapo, Douglas C. Smith, and
John T. Deeds, Attorneys for Appellees

JUDGE CAROLYN B. MCHUGH authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.


McHUGH, Judge:

¶1      Magna G. Hahnel, Cheryl Pietz, and Carol J. Stewart
(collectively, Buyers) appeal the trial court's entry of summary
judgment and award of attorney fees in favor of Duchesne
Land, LC and Highland Development, Inc. (collectively, Sellers).
We affirm.

BACKGROUND

¶2     In March 2004, Buyers purchased a lot with an option to build a cabin in Duchesne County, Utah. The transaction was memorialized in two contracts: an agreement for the purchase of the lot between Buyers and Duchesne Land (the Land Purchase Agreement) and a building sales contract between Buyers and Highland Development (the Building Contract). Due to unanticipated delays, Sellers offered to exchange Buyers' lot for a more valuable lot at no additional charge. Buyers accepted the offer, and the lot exchange was memorialized in a third agreement (the Exchange Agreement) that states, "Highland Development, Inc. has a projected completion date of cabin construction Sept. 30, 2004. However, Highland Development, Inc. will make every effort to have the cabin completed by Labor Day." The Exchange Agreement did not contain a provision indicating that time was of the essence.

¶3     Thereafter, Buyers obtained a construction loan for the cost of building the cabin and pledged the lot as security. During construction, a dispute arose between Sellers and Duchesne County that resulted in the cabin not being completed by September 2004. In addition, Buyers gave Sellers a punch list of items they claimed needed attention on three separate occasions between February and May 2005.

¶4     Sellers eventually completed the cabin, and Buyers received a permanent certificate of occupancy on June 3, 2005. Shortly thereafter, a painter informed Buyers that the cabin was infested with mold. Buyers notified Sellers of the problem and offered to sell them the cabin for $113,000. In response, Sellers offered to take the cabin and to refund $85,518.90, which they claimed was the sum of all amounts paid by Buyers to date. When Buyers refused, Sellers hired a contractor to remediate the mold. Buyers sought and were granted several extensions of their construction loan.

¶5    On September 12, 2005, Buyers sued Sellers, claiming that they had breached the Building Contract by (1) not completing it on time, (2) failing to rectify the punch-list items, and (3) delivering a cabin infested with mold.[1] After filing the complaint, Buyers made no further effort to keep the construction loan current or to obtain permanent financing. On November 10, 2005, the construction lender notified Buyers that the loan was in default and that the lender intended to initiate foreclosure proceedings. Buyers did not bring the loan current, and the cabin and lot were sold at a foreclosure sale on April 11, 2006.

¶6    Approximately two years later, Sellers filed a motion for summary judgment arguing that the damages Buyers sought were not recoverable and that Buyers were not entitled to attorney fees. In particular, Sellers argued that Buyers failed to mitigate their damages when they refused to obtain long-term financing to satisfy the construction loan, which they were capable of obtaining, and thereby failed to protect the property from foreclosure. Sellers also argued that the only attorney fees provision at issue was specifically limited to the Land Purchase Agreement, which had been fully performed. That provision states, "Buyer[s] shall pay all costs and expenses, including attorney's fees, incurred by Seller[s] in the enforcement of the terms of this agreement and/or the Trust Deed, whether or not a legal suit is brought by Seller[s] in connection therewith."

¶7    In response, Buyers disputed Sellers' claim that Buyers had forfeited their right to damages by failing to mitigate, asserting that they were entitled to recover their down payment and the equity in the lot and cabin. Buyers also claimed that the Land Purchase Agreement and the Building Contract were part of a single agreement and that the attorney fees provision was applicable to

---

1. Buyers also alleged seven fraud claims but voluntarily dismissed those claims in response to a motion for summary judgment Sellers filed in July 2006.

both. Although the express terms of the provision afforded only Sellers the right to recover their attorney fees, Buyers argued that they were also entitled to recover attorney fees pursuant to Utah Code section 78B-5-826 (the Reciprocal Fee Statute). *See* Utah Code Ann. § 78B-5-826 (LexisNexis 2012)[2] ("A court may award . . . attorney fees to either party that prevails in a civil action based upon any . . . written contract . . . when the provisions of the . . . written contract . . . allow at least one party to recover attorney fees.").

¶8      On August 11, 2008, the trial court issued a ruling and order agreeing with Sellers that Buyers had not mitigated their damages and therefore concluded that Buyers could not recover the loss of their down payment or the loss of their equity in the project. However, the trial court adopted Buyers' position with respect to attorney fees, determining that the Land Purchase Agreement and the Building Contract were an integrated agreement and that the attorney fees provision applied to both. In addition, it concluded that under the Reciprocal Fee Statute, Buyers were "entitled to attorney fees as a matter of law . . . on matters which they recover damages for."

¶9      After a four-day trial on Buyers' remaining claims, the jury determined that Sellers had not breached the contract. As a result, the jury never reached the issue of damages. Sellers then moved for an award of attorney fees. Buyers opposed the motion, arguing that the attorney fees provision was of limited scope and did not entitle Sellers to an award simply because they were the prevailing party. The trial court disagreed, stating that because it had ruled in its earlier order that Buyers were eligible for attorney fees under the Reciprocal Fee Statute, Sellers were necessarily entitled to an award of attorney fees incurred in successfully defending against Buyers'

---

2. Because there have been no substantive changes to the relevant sections of the Utah Code, we cite the current version for the convenience of the reader.

claims. After the trial court denied their motion for reconsideration, Buyers filed a timely appeal.

ISSUES AND STANDARDS OF REVIEW

¶10    Buyers first challenge the trial court's grant of summary judgment in favor of Sellers on damages. They argue that the erroneous ruling limited the damages evidence that Buyers could present to the jury, thereby impacting the jury's decision on liability. "When determining the propriety of a trial court's grant of summary judgment, we review the trial court's legal conclusions for correctness, affording those conclusions no deference." *Joseph v. McCann*, 2006 UT App 459, ¶ 9, 147 P.3d 547 (citation and internal quotation marks omitted).

¶11    Buyers next challenge the trial court's award of attorney fees and costs to Sellers, arguing that the terms of the attorney fees provision do not apply to Sellers' successful defense of the breach of contract claims. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Valcarce v. Fitzgerald*, 961 P.2d 305, 315 (Utah 1998).

ANALYSIS

I. Buyers' Damages Claim is Moot.

¶12    We begin our analysis with Buyers' claim that the trial court erred in limiting the damages they could request at trial. Specifically, Buyers argue that they were denied the right to a full and fair presentation to the jury because evidence of greater damages could have swayed the jury's determination of whether Sellers had breached the Building Contract. In response, Sellers contend that this issue is moot due to the jury's determination that Sellers did not breach either contract.

¶13　"An issue is moot when resolution of it cannot affect the rights of the parties." *Cox v. Cox*, 2012 UT App 225, ¶ 21, 285 P.3d 791. Because the jury concluded that Sellers had not breached either agreement, any decision about the damages that would have been available had the jury concluded otherwise could have no legal effect on the rights of the parties and is therefore moot. *Cf. Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 146, 82 P.3d 1076 ("The jury found no negligence by [defendant]. Without a finding of negligence, plaintiffs lack the requisite predicate for their fraudulent concealment claim because there was nothing to conceal. Hence, the jury's verdict rendered plaintiffs' fraudulent concealment claim moot."); *Nelson v. Peterson*, 542 P.2d 1075, 1077 (Utah 1975) ("The question of damages is moot since the jury found by general verdict for each defendant, which under the instructions of the court showed that neither defendant was negligent."); *Alarid v. American Appliance Mfg., Inc.*, 2002 UT App 376U, para. 4 (mem.) ("Appellant's arguments regarding Mr. Long's testimony are . . . moot because his testimony went to causation, an issue not reached by the jury because the jurors found no defect in the water heaters' design.").

¶14　Nor are we persuaded by Buyers' argument that evidence of greater damages was relevant to the liability determination. Essentially, Buyers claim that the jury might have found Sellers in breach if Buyers' injury had been greater. Whether there was a breach is an independent inquiry separate from the issue of damages. The jury was instructed to decide whether Sellers breached the Building Contract based on its terms and the evidence related to performance. Only if the jury found Sellers in breach was it to consider the extent to which that breach damaged Buyers. We presume that the jury understood and followed these instructions. *See generally State v. Nelson*, 2011 UT App 107, ¶ 4, 253 P.3d 1094 ("In the absence of the appearance of something persuasive to the contrary, we assume that the jurors were conscientious in performing . . . their duty, and that they followed the instructions of the court." (citation and internal quotation marks omitted)). Accordingly, the issue of whether the trial court erred in granting

partial summary judgment on the failure to mitigate damages is moot and we will not consider it. *See In re Adoption of L.O.*, 2012 UT 23, ¶ 8, 282 P.3d 977.

## II. Sellers Were Enforcing the Building Contract and Are Entitled to Attorney Fees.

¶15    The attorney fees provision states, "Buyer[s] shall pay all costs and expenses, including attorney's fees, incurred by Seller[s] in the enforcement of the terms of this agreement and/or the Trust Deed, whether or not a legal suit is brought by Seller[s] in connection therewith." Buyers contend that because Sellers did not advance any counterclaims or affirmative defenses, they did not incur any attorney fees "in the enforcement of the terms" of the Building Contract. Sellers respond that by proving no breach had occurred, they were enforcing the terms of the Building Contract.[3]

¶16    "As a general rule, attorney fees are recoverable only if authorized by contract or statute." *Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 9, 289 P.3d 600. "If the legal right to attorney fees is established by contract, Utah law clearly requires the court to apply the contractual attorney fee provision and to do so strictly in accordance with the contract's terms." *Jones v. Riche*, 2009 UT App 196, ¶ 2, 216 P.3d 357 (mem.). "Under basic rules of contract interpretation, [we] first look to the writing alone to determine its meaning and the intent of the contracting parties." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 44, 201 P.3d 966. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be

---

3. Although both parties also brief the impact of the Reciprocal Fee Statute on this question, Sellers are expressly covered by the attorney fees provision itself. Therefore, we agree with the trial court's statement that "the focus on the [Reciprocal Fee Statute] here is a red herring and an unnecessary step in the analysis."

interpreted as a matter of law." *Id*. (citation and internal quotation marks omitted).

¶17    In support of their argument that a purely defensive effort does not justify an award of attorney fees, Buyers point to our decision in *Carr v. Enoch Smith Co.*, 781 P.2d 1292 (Utah Ct. App. 1989). There, Carr agreed to purchase a home to be built by Smith, "'[s]ubject to [Carr] receiving a primary residence loan.'" *Id*. at 1293. When Carr had not made any serious effort to obtain a loan after a year, Smith revised the construction plans to make the home suitable for use as a model and returned Carr's earnest money payment. *Id.* Carr later sued Smith for specific performance. *Id*. The trial court ruled that Smith was excused from performing based on Carr's failure to obtain financing within a reasonable time and, after determining that the attorney fee provision was ambiguous, awarded Smith attorney fees based on the parties' stipulation that the prevailing party would be awarded costs and fees. *Id*. at 1293–94. On appeal, this court affirmed the decision on specific performance but reversed the award of attorney fees. *Id*. at 1294–96. The attorney fees provision there provided, "'If either party fails [to perform], he agrees to pay all expenses of enforcing this agreement, or of any right arising out of the breach thereof, including a reasonable attorney's fee.'" *Id*. at 1296 (emphasis omitted) (alteration in original). We noted that the provision provided "that either [Carr] or [Smith] would recover its fees if it successfully sued to enforce the contract, while both [Carr] and [Smith] would be left to absorb their own fees if instead one party merely resisted successfully an action to enforce the contract brought by the other party." *Id*. at 1296 n.5 (emphasis omitted). We further explained,

> Smith took an entirely defensive posture. It was not enforcing any right arising under the agreement or arising from a breach thereof. On the contrary, its position at trial was that there was no viable contract left to enforce. While Smith would surely be entitled to attorney fees under the more typical provision

awarding fees to the prevailing party, it is not entitled to attorney fees under the provision at issue.

*Id.* at 1296 (citation omitted).

¶18 Here, Buyers argue that since *Carr*, Utah courts have construed attorney fees provisions tied to "enforcement" of a contract as more limited in scope than provisions that award attorney fees to the prevailing party. However, each of the decisions relied upon by Buyers, like *Carr*, involved an attorney fees provision that required a default or failure to perform. *See Faulkner v. Farnsworth*, 714 P.2d 1149, 1151 (Utah 1986) (per curiam) ("The contractual language does not award attorney fees to the prevailing party who succeeds in enforcing the agreement, but against the defaulting party whose default necessitates enforcement. As neither party was held in default, neither was entitled to attorney fees."); *B. Inv. LC v. Anderson*, 2012 UT App 24, ¶¶ 31–34, 270 P.3d 548 (declining to award attorney fees to defendant who "prevailed in the trial court, but [who] did not demonstrate that the [plaintiff] violated any provision" of the contract because the attorney fee provision was triggered by a "failure to comply with any of the provisions"); *Maynard v. Wharton*, 912 P.2d 446, 451–52 (Utah Ct. App. 1996) (holding that where an attorney fees provision requires the defaulting party to pay attorney fees and the sellers do not establish any default by the buyers, the provision "does not contemplate an award of attorney fees for sellers just because buyers sued"). While we agree that the fee provision at issue in this case does not award fees to the prevailing party, it likewise does not require a finding that the other party is in default or has failed to perform. *See Carr*, 781 P.2d at 1296; *see also Faulkner*, 714 P.2d at 1151; *B. Inv.*, 2012 UT App 24, ¶¶ 31–34; *Maynard*, 912 P.2d at 451–52.

¶19 The attorney fee provision in the Land Purchase Agreement explicitly requires Buyers to pay for attorney fees and costs that are incurred by Sellers "in the enforcement of the terms of this agreement" and does so "whether or not a legal suit is brought by

Seller[s] in connection therewith." Based on that language, Sellers argue that the fee provision was triggered because the action was brought by Buyers to enforce their interpretation of the terms of the Building Contract and Sellers defended by asserting a contrary interpretation, even though "legal suit [was not] brought by Seller[s]."

¶20 Although the parties have pointed us to no Utah appellate decision that has addressed this precise question, other jurisdictions have considered similar issues. In *Aspen Services, Inc. v. IT Corp.*, 583 N.W.2d 849 (Wis. Ct. App. 1998), the Court of Appeals of Wisconsin considered whether a lessor was entitled to attorney fees under an attorney fee provision in a lease for successfully defending against a lessee's counterclaims. *Id.* at 850–51. The attorney fee provision provided, "'Lessee shall pay all costs, expenses and reasonable attorney fees that may be incurred or paid by Lessor in enforcing the covenants and agreements of this Lease.'" *Id.* at 850. The *Aspen* court concluded that when the lessor defended against the lessee's counterclaims, the lessor was "enforcing" the agreements of the lease. *Id.* at 851. Accordingly, the court determined that the lessor was entitled to recover its attorney fees associated with defending against the lessee's counterclaims. *Id.; see also Evergreen Cmty. Power LLC v. Riggs Distler & Co., Inc.*, No. 10-728, 2012 WL 1657742, at *5 (E.D. Pa. May 11, 2012) ("[I]t seems reasonable that the parties' contract should be construed to provide [plaintiff] with attorney's fees for its defense of [defendant's] various counterclaims. Through its effective defense [of counterclaims], [plaintiff] enforced its right to pay [defendant] only what was owed."), *aff'd*, Nos. 12-2365, 12-2423, 2013 WL 500731 (3d Cir. Feb. 12, 2013). An Indiana appellate court reached a similar conclusion in *Gerstbauer v. Styers*, 898 N.E.2d 369 (Ind. Ct. App. 2008). There, the court determined that an attorney fee provision, which stated, "'Each party shall pay the other party's reasonable legal costs and attorney's fees incurred in successfully enforcing against the other party any covenant, term or condition

of this Lease,'" entitled the lessor to recover reasonable attorney fees incurred in defending against the lessee's claims. *Id.* at 379. The *Gerstbauer* court reasoned, "In defending himself against [the lessee's] action, [the lessor] relied upon—and sought to have the trial court give effect to—the provision of the lease that permitted him to retain [the lessee's] property in the event of [the lessee's] default." *Id.* at 380.

¶21    A similar approach is appropriate here. By defending against Buyers' claims for breach of contract, Sellers were enforcing their interpretation of the terms of, and defending their right to retain the amounts paid by Buyers under, the Building Contract. To prove that there was no breach of the Building Contract despite Buyers' claim that the cabin was not completed on time, that the punch-list items were never completed, or that there was mold in the cabin that would justify a damages award to Buyers, Sellers had to establish that they had complied with the terms of the Building Contract. Accordingly, Sellers were engaged in an "enforcement of the terms of" the Building Contract as they interpreted them when they successfully defended against Buyers' claims that a breach had occurred. Therefore, Sellers were entitled to recover their attorney fees pursuant to the express language of the attorney fees provision.

III. Sellers Are Entitled to Attorney Fees on Appeal.

¶22    Last, Sellers request attorney fees on appeal. Because they were entitled to attorney fees in the trial court, Sellers may also recover their reasonable fees incurred on appeal. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (citation and internal quotation marks omitted)). We remand to the trial court for a determination of the appropriate amount of attorney fees and costs incurred on appeal to be awarded to Sellers.

CONCLUSION

¶23     The challenge to the trial court's summary judgment limiting Buyers' damages is moot because the jury found that Sellers had not breached the contract. By enforcing the terms of the Building Contract, Sellers were entitled to attorney fees pursuant to the attorney fee provision in the parties' agreement. Sellers are also entitled to attorney fees reasonably incurred on appeal, and we remand to the trial court for a determination of that amount.

¶24     Affirmed.

———————