2014 UT App 35

**Robert CARDON, Plaintiff and Appellant,**

v.

**JEAN BROWN RESEARCH and
Jean Brown, Defendants
and Appellees.**

**No. 20120575–CA.**

Court of Appeals of Utah.

Feb. 13, 2014.

Rehearing Denied June 18, 2014.

April L. Hollingsworth, for Appellant.

Mary Anne Q. Wood, Stephen Q. Wood, and Jared M. Asbury, for Appellees.

Judge J. FREDERIC VOROS JR. authored this Memorandum Decision, in which Judge MICHELE M. CHRISTIANSEN and Senior Judge RUSSELL W. BENCH concurred.[1]

VOROS, Judge:

¶ 1 Robert Cardon was employed, and later terminated, by Jean Brown Research. He sued, asserting five claims against Jean Brown Research and Jean Brown personally (collectively, JBR). These included claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and fraud. The district court granted summary judgment in JBR's favor on the fraud and unjust enrichment claims. The contract claims proceeded to trial. After a seven-day trial, the jury found in JBR's favor. Cardon now appeals the district court's grant of summary judgment on his fraud and unjust enrichment claims. We affirm.

¶ 2 Cardon was an at-will employee. In early 2008, he signed two contracts with JBR, the first in February, the second in April. Each consisted of a single page. The February version of the contract divided Cardon's compensation into three categories: salary, individual bonus, and team bonus. Cardon's salary and individual bonus depended on his success in reaching sales-revenue goals, and his team bonus depended on his team's collective success. The "Individual Bonus" section of Cardon's February contract contains a table with two columns. The first is labeled "Booked Revenue" and the second "Bonus Amount." Each line of the chart contains a sales revenue target and a promised bonus amount. The first line, for example, indicates that if Cardon's "booked revenue" reached "$2 million Annually from March to February of each year," he would receive a "Guaranteed Bonus of $65,000 the following year."

¶ 3 The April version of the contract appears on first examination to be identical to the February version. However, in the table of the April contract, the word "salary" replaced the word "bonus" four times, once in the second column header and once in each of the chart's lines. Thus, under the April contract, instead of receiving a "guaranteed bonus" for reaching his sales goals, Cardon would receive a "guaranteed salary" the following year. With these changes, references to Cardon's "bonus" elsewhere in the contract no longer referred to anything. JBR first described the four appearances of the word "bonus" in the February contract as an "error." Later, it described them as a "typo."

¶ 4 JBR moved for summary judgment, alleging that the facts before the court did not support Cardon's claims and that Cardon had not pleaded his fraud claim with particularity. In his memorandum opposing summary judgment, Cardon argued that the differences between the two contracts provided evidence supporting his fraud claim. In Cardon's view, the two contracts demonstrated that JBR "made representations to him regarding a salary and bonus structure that [JBR] never intended to abide by." But in granting JBR's motion for summary judgment on Cardon's fraud claim, the district court determined that Cardon had "not come forward with any evidence to support" his fraud claim. Cardon now argues that because he "set forth facts" suggesting JBR "effectively tricked [him] into unwittingly signing" the April contract, which altered the terms of the February contract, the district court's summary judgment decision "dismissing [his] fraud claim ... is clear error."

¶ 5 We review the district court's "legal conclusions and ultimate grant or denial of summary judgment for correctness." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Because Cardon is the nonmoving party, we view "the facts and all reasonable inferences drawn therefrom" in his favor. *Id.* (citation and internal quotation marks omitted). A district court properly grants summary judgment if "no genuine issue as to

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

any material fact" exists and if the moving party is "entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "However, we may affirm a grant of summary judgment on any ground available to the trial court, even if it is one not relied on below." *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

## I. Fraud

¶ 6 A plaintiff claiming fraudulent misrepresentation must establish nine elements:

(1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66. The ninth element is decisive here. In an employment context, fraud damages "consist of the losses that are immediately and proximately caused by the fraud." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 57, 201 P.3d 966. Accordingly, summary judgment is appropriate when an employee has "failed to raise a genuine issue of material fact regarding his damages." *Id.* ¶ 53.

¶ 7 Cardon filed his initial complaint unaware of the differences between the February and April contracts. In that complaint, Cardon claimed that JBR represented "that it intended to offer him a guaranteed salary plus bonuses if he sold a minimum of $2 million for the company." When JBR terminated his employment and refused to pay him the money he had earned under the agreements, Cardon argued, it failed to honor its earlier representations and caused Cardon financial harm. However, Cardon has apparently abandoned this theory. At oral argument before this court, Cardon argued that his fraud claim was based solely on JBR's surreptitious substitution of the April

contract for the February contract. His counsel stated, "If the April contract had never come to be, I don't think there would be a fraud claim." And when asked if his fraud claim rested on the theory that JBR tricked Cardon by substituting a disadvantageous April contract for the more favorable contract he had negotiated in February, Cardon's counsel replied, "Right. Exactly. It is that pure and simple."

¶ 8 JBR responds that Cardon's fraud claim is moot. Cardon cannot succeed on this theory, JBR argues, because at trial the jury determined that JBR did not breach either contract. After considering both versions of the contract, the jury found that JBR did not "breach[ ] its employment contract ... by failing to pay [Cardon] the amounts that he was entitled to under the contract" nor did it "breach[ ] the covenant of good faith and fair dealing." Cardon does not appeal from this jury verdict.

¶ 9 A claim becomes moot "when the requested judicial relief cannot affect the rights of the litigants." *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 132, 82 P.3d 1076. In *Jensen*, the "[p]laintiffs' medical malpractice claim was tried to a jury, ... and the jury found no negligence" by the defendant. *Id.* ¶ 137. Accordingly, the "plaintiffs lack[ed] the requisite predicate for their fraudulent concealment claim and their claim [was] therefore moot." *Id.* Similarly, in *Hahnel v. Duchesne Land, LC*, a jury considering two contracts concluded that the defendants had not breached either agreement. 2013 UT App 150, ¶ 13, 305 P.3d 208. This court considered the appellants' contract-damages claim in light of the jury verdict. We concluded that because the jury found no breach, "any decision about the damages ... could have no legal effect on the rights of the parties," and the appellants' contract-damages claim was therefore moot. *Id.*

¶ 10 The present case's procedural position is unusual: an appellant asserts a damages-dependent claim on appeal, but a jury has already found that the appellant suffered no damages. Courts in other jurisdictions facing claims of this type have held that a jury finding that the appellant suf-

fered no damages moots any claim on appeal of which damages are an essential element. *See, e.g., Johnson & Higgins of Alaska Inc. v. Blomfield,* 907 P.2d 1371, 1376 (Alaska 1995); *Cockings v. Austin,* 898 P.2d 136, 139 (Okla.1995); *Serda v. Dennis,* 2004 WY 141, ¶ 5, 100 P.3d 860 (Wyo.2004). Accordingly, because "one of the essential elements of fraud ... is that the plaintiff sustain damages," *Dilworth v. Lauritzen,* 18 Utah 2d 386, 424 P.2d 136, 138 (1967); *see also Giusti,* 2009 UT 2, ¶¶ 52–63, 201 P.3d 966, an unchallenged jury finding that a plaintiff suffered no damages moots the plaintiff's fraud claim on appeal.

¶ 11 The gist of Cardon's fraud claim as framed on appeal is that JBR tricked him into foregoing the benefits of the February contract, leaving him with the less valuable April contract. But the jury found that JBR breached neither contract. Consequently, even assuming Cardon's allegations of trickery to be true, JBR substituted one contract under which Cardon could not recover for another contract under which Cardon could not recover. Consequently, Cardon cannot establish the ninth element of fraud—damages. The jury's verdict on Cardon's contract claims thus moots his fraud claim. *See Jensen,* 2003 UT 51, ¶ 132, 82 P.3d 1076; *see also Salt Lake County v. Holliday Water Co.,* 2010 UT 45, ¶ 21, 234 P.3d 1105 ("[M]ootness can be determined by facts that change or develop as the suit is pending." (alteration in original) (citation and internal quotation marks omitted)); *Cox v. Cox,* 2012 UT App 225, ¶ 21, 285 P.3d 791 ("An issue is moot when resolution of it cannot affect the rights of the parties.").[2] "[W]e simply lack the judicial power to render a decision" on a moot issue. *Velasquez v. Harman–Mont & Theda, Inc.,* 2014 UT App 6, ¶ 18. We therefore dismiss Cardon's appeal with respect to his fraud claim. *See Varian–Eimac, Inc. v.*

*Lamoreaux,* 767 P.2d 569, 570 (Utah Ct.App. 1989).

## II. Unjust Enrichment

¶ 12 Cardon also contends that the district court erred in dismissing his unjust enrichment claim. Cardon argues that when JBR terminated him, he stood "on the verge of signing the biggest contract of the year for any JBR employee, worth several hundred thousand dollars." In Cardon's view, because JBR offered "no reliable evidence" rebutting that argument, the evidence he offered presents "a dispute of fact regarding whether [he] effectively made the deal and [JBR was] unjustly enriched by his efforts when they terminated him." In response, JBR argues that "a valid contract govern[ed] ... Cardon's employment and his compensation" and that "no claim for unjust enrichment may lie where a valid contract existed."

¶ 13 "[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue." *Ashby v. Ashby,* 2010 UT 7, ¶ 14, 227 P.3d 246. "Therefore, where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." *Selvig v. Blockbuster Enters., LC,* 2011 UT 39, ¶ 30, 266 P.3d 691 (citation and internal quotation marks omitted).

¶ 14 Here, an express contract exists covering the subject matter of the litigation— Cardon's job performance, his compensation, and his termination. Although the parties disagreed about which contract controlled, neither argued that no contract controlled. Because a contract covering the subject matter exists, "recovery for unjust enrichment is not available" here. *See id.*[3]

---

2. We do not consider whether the district court correctly granted summary judgment on Cardon's fraud claim based on the state of the record before trial. Cardon argues that the inconsistencies between the February and April contracts provide sufficient evidence of JBR's fraudulent intent to survive summary judgment. Viewing the facts and drawing all reasonable inferences in the light most favorable to Cardon, the two contracts may well raise a genuine issue of material fact. *See* Utah R. Civ. P.

56(c). But because the jury verdict moots Cardon's claim, we need not consider that hypothetical possibility.

3. Faced with JBR's argument that the existence of an enforceable contract makes an unjust enrichment claim unavailable, Cardon asserts JBR "did not raise [that argument] in [its] summary judgment pleadings." The timing of JBR's argument has no effect on our determination.

¶ 15 The jury verdict leaves Cardon without a viable damages theory on his fraud claim. His argument challenging the district court's summary disposition of his fraud claim is therefore moot. Because an express contract governs Cardon's employment rights, he cannot pursue an unjust enrichment claim. Accordingly, we dismiss Cardon's appeal with respect to his fraud claim and affirm the district court's grant of summary judgment on his unjust enrichment claim.

On appeal, "we may affirm a grant of summary judgment on any ground available to the trial court, even if it is not relied on below," *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993), so long as "the alternate ground is apparent on the record," *Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158. Utah law permits a district court on summary judgment to deny an unjust enrichment claim in the presence of an express contract. *See, e.g., Nickerson Co. v. Energy West Mining Co.*, 2009 UT App 366U, paras. 3–4, 2009 WL 4681778; *see also TruGreen Cos., LLC v. Mower Bros., Inc.*, 2008 UT 81, ¶ 18, 199 P.3d 929 (stating that restitution and unjust enrichment claims are "tools of equity, . . . used only when no express contract is present"). We affirm on that basis.